(No. 5461. Decided August 7, 1905.)

MINNIE STEVICK et al., Respondents, v. NORTHERN PACIFIC RAILWAY COMPANY, Appellant, DAVID GREGG, Defendant.[1]

MASTER AND SERVANT — NEGLIGENCE — JOINT ACTION AGAINST FOR NEGLIGENCE OF SERVANT—VERDICT EXONERATING SERVANT AND AGAINST MASTER—LEGAL EFFECT. In an action against a railroad company and its master mechanic for the wrongful death of a brakeman, a verdict in favor of the master mechanic and against the railroad company exonerates the company, precluding any recovery against it, where it is alleged in the complaint and admitted that it was the duty of the master mechanic to keep the engines in proper repair, and the only negligence alleged is that of the master mechanic in failing to repair an engine to prevent escaping steam, by reason of which the death was caused.

MASTER AND SERVANT—NEGLIGENCE—DEATH OF BRAKEMAN MAKING FLYING SWITCH — CONTRIBUTORY NEGLIGENCE — WRONG SIGNAL BY DECEASED. There can be no recovery for the death of a brakeman, on account of his contributory negligence in assisting in making a flying switch, where it appears that deceased (who was practically in charge of the operation), contrary to his duty, gave the signal to go ahead before uncoupling the car, and in reliance thereon the engineer went ahead, and the other brakeman turned the switch before the car had passed the switch, thereby derailing the car and causing the death.

SAME—FELLOW SERVANT. If such accident was caused by the negligence of the other brakeman, the result would be the same, since he was a fellow servant of the deceased.

Cross-appeals from a judgment of the superior court for King county, Griffin, J., entered June 28, 1904, upon the verdict of a jury, rendered in favor of the plaintiffs against one of the defendants, and in favor of the other defendant, after a trial on the merits, in an action for the wrongful death of a brakeman who was assisting in making a flying switch. Reversed on defendant's appeal, and action dismissed.

1 Reported in 81 Pac. 999.

*B. S. Grosscup, Jas. F. McElroy,* and *A. G. Avery,* for appellant, contended among other things, that where an injury results from a servant's performance of his duty in an improper manner, he must be held guilty of contributory negligence. *Moody v. Smith,* 64 Minn. 524, 67 N. W. 633; *Atchison etc. R. Co. v. Alsdorf,* 56 Ill. App. 578; *Browne v. New York etc. R. Co.,* 158 Mass. 247, 33 N. E. 650.

*Benson & Hall,* for respondents.

MOUNT, C. J.—This action was brought to recover damages on account of the death of Jesse L. Stevick, who was a brakeman in the employ of the Northern Pacific Railway Company. Stevick was killed while attempting to make what is called a "flying switch," at Argo, on October 16, 1903. The action is based on alleged negligence of the defendants. The complaint states a joint cause of action against the two defendants, alleging, in substance, that the defendant David Gregg was the master mechanic, agent, and servant of the defendant Northern Pacific Railway Company, having charge of its roundhouse and repair shops at Seattle, and charged with the duty of making all necessary repairs to engines whenever they were reported out of order; that the defendant railway company was the owner and operator of engine No. 163, which was defective in that the piston valves were in a dangerous and leaky condition and emitted large quantities of steam; that the defective condition of said engine was reported to David Gregg, several times prior to the death of Stevick; that the defendants, and both of them, negligently failed to repair said engine, or in any manner to stop the said leakage of steam therefrom; that, on the 16th day of October, 1903, while an effort was being made by said Stevick and a fellow brakeman to switch a caboose to a side-track, the said engine leaked steam so badly that a brakeman, Quinn, who was to throw the switch for the purpose of putting said caboose on the side-track, was prevented, by escaping

steam, from seeing whether the caboose had been uncoupled from the engine; and that, believing that they were separated, he threw the switch immediately after the engine passed over the same, whereby the caboose, which had not been uncoupled, was thrown from the track and Stevick was killed.

The answer of the railway company admitted that the defendant Gregg was its master mechanic at Seattle, charged with the repair of all its engines, and denied all the allegations of negligence, but admitted that the brakeman Quinn threw the said switch while the engine and the caboose were coupled together, thereby throwing the caboose from the track and killing Stevick. It also set up affirmative defenses of contributory negligence, assumption of risk, and the negligence of a fellow servant. The answer of defendant Gregg admitted that he was the master mechanic of the defendant railway company, charged with the duty of keeping its engines in proper repair, and denied all the allegations of negligence charged in the complaint. Plaintiffs' reply denied the affirmative matter charged in the answer of the railway company.

Upon these issues, the cause came on for trial before the court and a jury. At the close of plaintiffs' evidence, the defendants each challenged the sufficiency of the evidence, and moved for a directed verdict. This motion was denied. After the evidence on behalf of the defendants had been introduced, the same motion was renewed and denied. The cause was thereupon submitted to the jury, and a verdict was rendered against the Northern Pacific Railway Company for $3,250, and in favor of defendant Gregg. Defendant railway company thereupon moved for a dismissal of the action, upon the ground that the verdict in favor of defendant Gregg amounted in law to a discharge of defendant railway company. This motion was denied, and a judgment entered against the railway company upon the verdict. This appeal is from that judgment.

Appellant assigns error upon the refusal of the court to direct a verdict at the close of plaintiffs' evidence, because the evidence shows: (1) That the negligence of Stevick himself contributed to his death; (2) that the negligence of a fellow brakeman was the proximate cause of the injury; also that the verdict in favor of defendant Gregg was a discharge of the defendant railway company. The positions of the appellant upon the first and last grounds stated must be sustained.

It appears from the evidence that, early on the morning of October 16, 1903, engine No. 163, and a crew consisting of the engineer, fireman, conductor, and two brakemen, one of whom was Stevick, left Seattle with a caboose attached to the engine, under orders to make up a freight train at Argo, a freight yard just outside the city limits of Seattle. This crew arrived at Argo about four o'clock in the morning. It was still dark, and the weather was somewhat foggy. They proceeded to place the caboose on a side-track by means of a flying switch, while the train was to be made up on the main line. A flying switch is made by starting some distance back from the switch, and having the engine run rapidly, for a short distance, with the car intended to be switched off attached; then, slackening the speed of the engine, allowing the car to come up against the engine so that it can be uncoupled from the engine. When the coupling pin is drawn by the brakeman on the car, it is his duty to give the signal to go ahead. The engineer then quickens his speed and runs away from the car and over the switch. After the engine runs over the switch, the brakeman at the switch turns the switch, and lets the car, which comes along by its own momentum, run off onto the side-track.

On the morning of the 16th of October, as stated, the engine ran with the caboose from the roundhouse in Seattle down to the switch at Argo, and stopped. There the conductor, the fireman, and the engineer were in the cab of the engine. The brakeman Quinn took his station at the

switch. Stevick remained upon the caboose to uncouple it from the engine at the proper time, and stop it on the side-track. The engine and caboose thereupon backed up "from fifty to one hundred yards," and again came to a stop. The engineer "whistled off," which meant that the engine and caboose were ready to start. The headlight was burning on the engine, and lights were on the rear end of the caboose on each side. Quinn could only see the headlight of the engine. He thereupon signaled to the engineer that the switch was clear, and to come ahead. The engineer then came toward the switch rapidly for a short distance, far enough to make the switch, and then slackened speed to allow Stevick to uncouple the car from the engine. Thereupon Quinn, at the switch, heard some one, whom he took to be Stevick, "holler 'All right,'" which indicated that the caboose had been uncoupled from the engine. The engine thereupon increased its speed, and, as it crossed over the switch, Quinn, without seeing the caboose, turned the switch just back of the engine. The caboose had not been uncoupled from the engine, and the switch was turned by Quinn after the front trucks had passed over, but before the rear trucks reached, the switch. The result was that the front trucks of the caboose passed down the main line and the rear trucks passed on to the switch, causing the caboose to turn over on its side. Stevick was thrown beneath it and killed.

Brakeman Quinn testified that steam was escaping from the cylinders on the left side of the engine so that he could not see the sides of the engine or the caboose, and having heard the signal which indicated that the car was uncoupled, and not being able to see it, he supposed it had been uncoupled and therefore threw the switch. There was some evidence to the effect that the engine had been leaking steam about the piston for some time prior to the accident, and that the same had been reported to the defendant Gregg. Quinn testified that the engine was leaking steam, and, by reason of that fact, he did not see that the caboose was

attached to the engine. The evidence of the witness Quinn was the only. evidence offered by the plaintiffs as to how the accident occurred, and is substantially as stated above.

The only negligence alleged or attempted to be proven was that the engine was out of repair and was leaking steam, and that Gregg, the agent of the company, had notice to repair it. The defendant Gregg was joined in the action by reason of the fact that he was the master mechanic in charge of the engine, knew its condition, and, it is alleged, neglected to make the necessary repairs. The fact was admitted that the defendant Gregg was the master mechanic in charge of the engine, and that it was his duty to keep it in repair. When the jury found that defendant Gregg was not negligent, then it necessarily followed that the railway company was not negligent, because the negligence of the railway company, as stated in the complaint, is .based upon the negligence of Gregg. It is true that the complaint states "that defendants, and both of them, negligently failed to repair said locomotive," but the complaint, taken as a whole, shows that the negligence of the company is based entirely upon the alleged negligence of its servant Gregg in charge of its locomotives. The jury, having found that defendant Gregg was not negligent, and having returned a verdict in his favor,. necessarily exonerated the railway company. *Doremus v. Root,* 23 Wash. 719, 63 Pac. 572, 54 L. R. A. 649.

The court .should have sustained the motion for a directed verdict upon the showing of the witness Quinn. The evidence shows that, after the engine had slackened its speed to permit Stevick to uncouple the caboose from the engine, Quinn, who was stationed at the switch, testified that he heard Stevick give the signal to go ahead, which indicated that the uncoupling had been made. Quinn also testified that Stevick should have given no signal until the caboose had been uncoupled from the engine. All the witnesses upon this question agree that Stevick gave the signal to go

ahead. They differed only as to the manner in which it was given. This signal caused the engineer to go ahead. It also caused the brakeman at the switch to turn the switch after the engine had passed. Stevick was practically in charge of the switching operation. His wrong signal caused the engineer to go ahead and the switchman to throw the switch. But for this signal, the accident could not have occurred. Both the engineer and the switchman had a right to rely upon this signal, and to act upon it. *Browne v. New York etc. R. Co.*, 158 Mass. 247, 33 N. E. 650.

But if it was the duty of the brakeman who was at the switch not to turn the switch, unless he could see that the caboose was detached, and far enough behind the engine so that the switch might be turned in safety, still, the negligence of the brakeman at the switch, if he was negligent, is the negligence of a fellow servant, and the final result, upon the whole case, would be the same we have already reached.

For the reasons above given, the judgment is reversed, and the action ordered dismissed.

ROOT, CROW, and RUDKIN, JJ., concur.