## D. B. LOVEMAN CO. *v.* BAYLESS.*

## (*Knoxville.* September Term, 1913.)

1. **TRIAL. Joint defendants. Verdict for servant. Effect as to master.**

When a master is sued solely for misfeasance or nonfeasance on the part of his servants and is liable for their conduct only under the doctrine of *respondeat superior*, a verdict, permitted to stand in favor of such servants, either in the same action or in a prior action, entitles the master to a discharge from such claimed liability. (*Post, p.* 312.)

Cases cited and approved: Doremus v. Root, 23 Wash., 710; Stevick v. Northern Pac. R. Co., 39 Wash., 501; Norris v. N. W. Improvement Co., 53 Wash., 451; Sipes v. Puget Sound Electric Ry., 54 Wash., 47; Aldrich v. Inland Empire Co., 62 Wash., 173; McGinnis v. Chicago, R. I. & P. R. Co., 200 Mo., 347; Indiana Nitroglycerine, etc., Co. v. Lippincott Glass Co., 165 Ind., 361; Southern Ry. Co. v. Harbin, 135 Ga., 122; Chicago, St. P. & M. Co. v. McManigal, 73 Neb., 580; Montfort v. Hughes, 3 E. D. Smith (N. Y.), 591; Anderson v. Fleming, 160 Ind., 597; Hill v. Bain, 15 R. I., 75; Hayes v. Chicago Telephone Co., 218 Ill., 414; New Orleans & N. E. R. Co. v. Jopes, 142 U. S., 18, 24, 27, 12 Sup. Ct., 109; Gill v. Morris, 58 Tenn., 614; Bank of Commerce v. Porter, 60 Tenn., 447; Renkert v. Elliott, 79 Tenn., 235.

Cases cited and disapproved: I. C. R. R. Co. v. Murphy, 123 Ky., 787; G. C. & S. F. R. Co. v. James, 73 Tex., 12; Gardner v. Southern R. Co., 65 S. C., 341; Carter v. Southern Ry. Co., 93 S. C., 329.

---

*As to whether a judgment in favor of employee bars recovery against employer for employee's act or default, see note in 54 L. R. A., 649. And upon effect of verdict for servant in action against master and servant for latter's negligence or misfeasance, see notes in 9 L. R. A. (N. S.), 880 and 30 L. R. A. (N. S.), 404.

**2. TRIAL.   Verdict for servant.   Effect as to master.**

Where a master is liable for an injury to a third person on grounds other than the misconduct of his servant, he may be held liable notwithstanding a verdict in favor of the servant. (*Post, p.* 317.)

Cases cited and approved:   Jones v. Seattle, 51 Wash., 245; Aldrich v. Inland Empire Co., 62 Wash., 173; Clay v. Chicago, Milwaukee & St. Paul Railway Co., 104 Minn., 1.

**3. APPEAL AND ERROR.   Assignments of error.   Necessity.**

In an action against an employer and two of its employees for false imprisonment, assault and slander, in which a verdict was rendered against the employer and in favor of the employees, where it appeared that other employees not sued assisted in inflicting the injuries complained of, the supreme court could not, in the absence of an assignment of error that there was no evidence to support the verdict against the employer, examine the evidence for the purpose of determining whether there was evidence sustaining the employer's liability, aside from the evidence as to the conduct of the employees exonerated by the verdict, and hence would affirm the judgment. (*Post, p.* 318.)

FROM HAMILTON

Appeal from the Circuit Court of Hamilton County. —N. L. BACHMAN, Judge.

C. R. EVANS, for D. B. Loveman Co.

SHEPHERD, FLEMING & SHEPHERD, for J. B. Bayless.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Bayless, the defendant in error, sued the D. B. Loveman Company, a mercantile corporation, and two of its servants, D. B. Loveman, its president, and D. C. Seymour, its superintendent, in an action of damages, in the circuit court of Hamilton county. The declaration contained eight counts, but presented only three distinct charges, false imprisonment, assault and battery, and slander, all rooted in the same transaction, or series of transactions. The defendants pleaded not guilty to all of the counts, but also interposed special pleas of justification as to the matter of slander charged, and another plea that the statements charged as slanderous were privileged.

There was evidence tending to show the following facts: Defendant in error was first employed in the store of the D. B. Loveman Company as a bundle wrapper, and while he was in this employment fifty cents was missed, which the company's agents supposed he had appropriated. He was called, taken aside, and told that a sale slip with the money had been traced to his balcony, and it could not be found in the cashier's possession, to which it was his duty to deliver it. He replied that it would appear as if he had it, and suggested that they search him. They did so, and found nothing. Shortly after this he was placed in charge of a room containing what was called the reserve stock; that from which the various departments of the store were, from time to time, replenished. About three weeks after he took charge of this reserve stock a head of one of the departments dis-

covered certain articles missing from boxes sent down from the reserve stock—a mirror, some combs, some soap, and a few other small articles. The superintendent, Seymour, began investigating. He found a mirror, and a comb and brush, and some writing paper, in defendant in error's locker, and that the mirror was afterwards put back into stock by defendant in error. All of these articles were in the locker of his predecessor; he merely removed them to his own when the latter left, not knowing they belonged to the stock, if in fact they did so belong. Mr. Seymour, however, believed that they had been stolen from the stock, and informed the president Mr. Loveman. The latter directed Seymour to search defendant in error, if he would consent to the search. Seymour called defendant, about closing time, into the clothing department, and had with him a superintendent of one of the departments, Mr. Campbell, to witness the transaction. When defendant in error reached the clothing department Seymour, in the presence of Campbell, asked defendant in error if he would submit to a search by him, or would he prefer to be searched by an officer, threatening defendant in error, in substance, with arrest if he did not submit to the search, and charged him with taking the articles already mentioned. Under these circumstances defendant in error submitted. The search disclosed nothing. When it was over defendant in error left the store in tears. Soon afterwards he brought the present suit.

The jury rendered a verdict against the corporation, and a verdict in favor of defendants Seymour and Loveman, thus exonerating them from all blame. Defendant in error made no motion for a new trial as to this latter verdict, nor in any way sought to disturb it. The plaintiff in error, the D. B. Loveman Company, moved for a new trial on sundry grounds, all of which were overruled by the trial judge, and judgment rendered against the plaintiff in error. An appeal was prayed and prosecuted to the court of civil appeals. That court passed on only one of the grounds for new trial, finding that sufficient for a disposition of the case, sustaining that ground and reversing the judgment, and remanding the cause for a new trial. The defendant in error then brought the case to this court by the writ of *certiorari*. The only question presented to the court is based on the action of the court of civil appeals in sustaining the motion for new trial on the point referred to. None of the other points relied on in the motion for new trial are before us.

The point sustained by the court of civil appeals, and presented there by an assignment of error in due form was in substance as follows:

That the verdict in favor of plaintiff in errors' servants who alone committed the acts complained of, if they were committed at all, for the commission of which plaintiff in error was sued, as their master, or principal, under the rule of *respondeat superior*, under which alone plaintiff in error could be held liable if at all, rendered the verdict against plaintiff in error

erroneous, and unsustainable, and entitled it to have that verdict set aside; the verdict against plaintiff in error being based solely on the same evidence under which the jury exonerated its servants.

In the petition for the writ of *certiorari* and accompanying brief the defendant in error denies the soundness of the contention, and also insists that, even if sound, it is not available to plaintiff in error because no error was assigned to the effect that there was no evidence to support the verdict.

Defendant in error insists that, conceding the soundness of the rule of law involved, still to make it available it is necessary to examine the evidence to ascertain whether there was any testimony that would hold plaintiff in error, notwithstanding the verdict in favor of its servants. On the other hand, plaintiff in error insists that it is necessary to refer to the facts only to test the applicability of the legal rule invoked, just as the correctness, or incorrectness, of a charge is tested by reference to the facts to ascertain the applicability of such charge or instructions.

To determine these controversies it is essential that we state the rule. It is, in substance, this:

When the master is sued solely for misfeasance, or nonfeasance, on the part of his servants, being liable for their conduct only under the doctrine of *respondeat superior*, a verdict, permitted to stand in favor of such servants, either in an action where they are sued with the master, or in a prior action, entitles the master to a discharge from such claimed liability. This

rule is supported by the great weight of authority. *Doremus* v. *Root,* 23 Wash., 710, 63 Pac., 572, 54 L. R. A., 649, and note; *Stevick* v. *Northern Pac. R. Co.,* 39 Wash., 501, 81 Pac., 999; *Morris* v. *N. W. Improvement Co.,* 53 Wash., 451, 102 Pac., 402; *Sipes* v. *Puget Sound Electric Ry.,* 54 Wash., 47, 102 Pac., 1057; *Aldrich* v. *Inland Empire Co.,* 62 Wash., 173, 113 Pac., 264; *McGinnis* v. *Chicago, R. I. & P. R. Co.,* 200 Mo., 347, 98 S. W., 590, 9 L. R. A. (N. S.), 880, and note, 118 Am. St. Rep., 661, 9 Ann. Cas., 656, and note; *Indiana Nitroglycerine, etc., Co.* v. *Lippincott Glass Co.,* 165 Ind., 361, 75 N. E., 649; *Southern Ry. Co.* v. *Harbin,* 135 Ga., 122, 68 N. E., 1103, 30 L. R. A. (N. S.), 404, 21 Ann. Cas., 1011; *Chicago, St. P. & M. Co.* v. *McManigal,* 73 Neb., 580, 103 N. W., 305, 107 N. W., 243; *Montfort* v. *Hughes,* 3 E. D. Smith (N. Y.), 591.

Illustrating the point: In *Doremus* v. *Root,* it was held that, in an action against a railroad company and its conductor for an injury caused by the alleged negligence of the conductor, a verdict in favor of the latter would preclude a judgment against the company. In *McGinnis* v. *Chicago, etc., R. Co.,* the action was based on the negligence of one French, a servant of the company employed in bridgework on the line. A verdict was rendered in favor of French, but against the company. It was held that in view of the former verdict the latter could not be sustained. In *Indiana Nitroglycerine, etc., Co.* v. *Lippincott Glass Co.,* it appeared that the action was based solely on the negligence of a servant, and both he and the master were

sued in the same action. The trial judge charged the jury: "There are two defendants in this case, and you may find for the plaintiff against both of them, or against one and for the other, or you may find for both of the defendants, as the preponderance of the evidence warrants." This was held error, on the ground that, inasmuch as the action was based solely on the negligence of the servant, there could be no liability of the master if the servant was not negligent. In *Southern Railway Co.* v. *Harbin,* the action against the company and the engineer on one of its trains was based solely on the negligence of the engineer. A verdict was returned in favor of the engineer, but against the company. It was held that the latter verdict could not stand, and the judgment based thereon was reversed. These illustrations will suffice. The principle is firmly established in even a wider application, as, for example, cases involving lessor and lessee sought to be held liable on the same cause of action (*Portland Gold Mining Co.* v. *Stratton's Independence,* 158 Fed., 63, 85 C. C. A., 393, 16 L. R. A. [N. S.], 677, and cases cited); in suits against cities for the negligence of one who had contracted to make a street improvement, where it appeared that a former suit against such person doing the work had failed (*Anderson* v. *Fleming,* 160 Ind., 597, 67 N. E., 443, 66 L. R. A., 119; *Hill* v. *Bain,* 15 R. I., 75, 23 Atl., 44, 2 Am. St. Rep., 873); in a suit against a city and a telephone company, for injuries caused by a broken wire maintained by the city on the company's poles (*Hayes*

v. *Chicago Telephone Co.*, 218 Ill., 414, 75 N. E., 1003, 2 L. R. A. [N. S.], 764). The reason on which the conclusion rests, in cases involving master and servant, is that where the servant by whose act the injury occurred is exonerated it is contradictory and absurd to find the master guilty on the same evidence; that the servant's liability is primary, that of the master secondary, or derivative, depending wholly on his duty to respond for the fault of his servant in the line of his employment, in the nature of a suretyship; that when the relations between the two are left undisturbed, the master has the right to recover over against the servant for any liability imposed upon the former by the misconduct of the latter, but if the latter be exonerated in an action between him and the injured person, this *status* is destroyed, and the master prevented from such recovery. As to the rationale of liability or nonliability, it is said in *New Orlean & N. E. R. Co.* v. *Jopes*, 142 U. S., 18, 24, 27, 12 Sup. Ct., 109, 111, 112 (35 L. Ed., 919), in which it was sought to hold a railroad company liable for the act of its conductor in injuring a passenger: "It would seem on general principles that if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity. . . . If the immediate actor is free from responsibility because his act was lawful, can his employer, one taking no direct part in the transaction, be held responsible? . . . The question carries its own answer; and it may be generally affirmed that if

an act of an employee be lawful, and one which he is
justified in doing, and which casts no personal respon-
sibility upon him, no responsibility attaches to the em-
ployer therefor.'' The reason on which the other cases
rests is that everyone is entitled to his day in court,.
and no more, on the same cause of action; that he has
enjoyed this right when he has contested the matter
with persons committing the wrong and primarily lia-
ble, and has been cast in such suit; that to permit him
after this to contest the matter with one only second-
arily liable would be to give him two suits upon the
same cause of action. It is said to be a branch of the
law of *res adjudicata,* but not requiring that the par-
ties should be the same, or those strictly in privity.
These questions have not previously arisen in our State
except in cases involving principal and surety, and
on this subject our authorities are fully in accord with
the current of authority: *Gill* v. *Morris,* 11 Heisk. (58
Tenn.), 614, 27 Am. Rep., 774; *Bank of Commerce* v.
*Porter,* 1 Baxt. (60 Tenn.), 447; *Renkert* v. *Elliott,*
11 Lea (79 Tenn.), 235, 249-255.

The case of *Moore* v. *Fitchburg R. Co.,* 4 Gray
(Mass.), 465, 64 Am. Dec., 83 is cited as in conflict with
the general doctrine. In that case it is true the court
said it had nothing to do with the inconsistency of the
verdict. However, the question covered by the cases
above cited does not seem to have been in the mind of
the court. *I. C. R. R. Co.* v. *Murphy,* 123 Ky., 787, 97
S. W., 729, 11 L. R. A. (N. S.), 352, is in conflict with
the doctrine, and *G., C. & S. F. R. Co.* v. *James,* 73

Tex., 12, 10 S. W., 744, 15 Am. St. Rep., 743, seems also to be so. The earlier South Carolina cases (*Gardner* v. *Southern R. Co.*, 65 S. C., 341, 43 S. E., 816; *Bedenbaugh Southern R. Co.*, 69 S. C., 1, 48 S. E., 53) also take the opposite view, but the latest case from that State seems to be approaching the general view (*Carter* v. *Southern Ry. Co.*, 93 S. C., 329, 75 S. E., 952.) At least the court was equally divided. We are also referred to the doctrine that in actions against joint tort-feasors a judgment may be rendered against all of them or any one of them. But that doctrine has no application to a case like the one before us. Where the master is not present and participating, or has no other direct relation to the wrong or injury, but is only liable because of the doctrine of *respondeat superior*, he does not occupy the position of a joint wrong-doer.

The last proposition leads to the statement of a differentiation of the general doctrine we have been considering, to the following effect. If the evidence shows liability of the master on grounds other than the misconduct of his servant, he may be held, notwithstanding a verdict in favor of the servant. This principle was recognized in *Jones* v. *Seattle*, 51 Wash., 245, 98 Pac., 743; *Aldrich* v. *Inland Empire Co.*, supra, and *Clay* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 104 Minn., 1, 115 N. W., 949. In the case last cited there were two grounds of liability considered, the too great proximity of the depot platform to the passing cars, and the negligence of the conductor. The jury

rendered a verdict in favor of the conductor, but the court held this did not entitle the railway company to a discharge, since the other claim of liability remained for the jury to pass on as affecting the company's liability.

The defendant in error insists there is other evidence in the record to sustain the liability of plaintiff in error aside from the conduct of D. B. Loveman and D. C. Seymour, who were exonerated by the jury. It is insisted that there were two other agents of plaintiff in error who were not sued, Bratton and Campbell who assisted in inflicting the injuries upon defendant in error that are complained of, and that no estoppel in respect of their complicity arises out of the verdict. This is certainly a proper inquiry for the purpose of determining the applicability to the present case of the rule of law we have been considering. But to enable us to inquire, and also to enable us to determine generally that there is no evidence to support the verdict against the plaintiff in error aside from that which applied to the conduct of D. B. Loveman and D. C. Seymour, it is essential that we examine the evidence. But we are met by the rule that the supreme court cannot test the validity of a verdict by the evidence, except upon an assignment that there is no evidence to sustain the verdict, and there is no such assignment in the case before us. This rule is so well settled in this State that it needs no citation of authority. There being no such assignment, we cannot go into the evidence to see whether the case is of such

a character that it would justify us in applying the rule laid down in *Doremus* v. *Root,* and similar cases cited supra, although we have carefully read all of the evidence.   From what has been said it is clearly apparent that plaintiff in error's contention is unsound; that we can solve the question by looking to the evidence only in such manner as the court examines evidence to determine the applicability of a contested instruction submitted to the jury by the trial judge.

It results that the judgment of the court of civil appeals must be reversed, and that of the trial judge affirmed.