(80 South. 84)

### SUPREME LODGE OF THE WORLD, LOYAL ORDER OF MOOSE, et al. v. GUSTIN.   (6 Div. 652.)

(Supreme Court of Alabama.   June 29, 1918. Rehearing Denied Nov. 14, 1918.)

1. INSURANCE ⬳697 — FRATERNAL ORDER — CHARTERED LODGE—INITIATION.

A regularly chartered subordinate lodge in taking in and initiating candidates into its membership was acting as the agent of the Supreme Lodge.

2. INSURANCE ⬳697—ACTS OF AGENT—LIABILITY OF PRINCIPAL.

A Grand Lodge as principal is responsible for the acts of a subordinate lodge acting within the line and scope of its authority as agent in the initiation of candidates into membership, although the agent accomplished the same in an improper way not authorized by the principal.

3. ACTION ⬳42—MISJOINDER—TORT.

A complaint clearly asking to fix liability upon defendants as for a joint tort is in case against all the defendants, and not subject to the assignment of demurrer for misjoinder of causes of action.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. DEATH ☞47 — ACTIONS FOR WRONGFUL DEATH—DUTY TO PLAINTIFF'S INTESTATE.**

A complaint against the Supreme Lodge, the subordinate lodge, and several officers and individual members thereof for the wrongful death of plaintiff's intestate caused during initiation into membership, was not subject to demurrer for want of showing the relationship of parties or the duty owing to plaintiff's intestate.

**5. APPEAL AND ERROR ☞1039(2)—HARMLESS ERROR—PLEADING—DEATH ACTION.**

The objection that a complaint, in an action for wrongful death brought under Homicide Statute (Code 1907, § 2486), does not state where the wrongful death occurred, must be regarded as highly technical, where it is undisputed that it occurred in the city of Birmingham, and such omission did not involve any substantial rights of the parties and can avail nothing.

**6. TRIAL ☞31—READING OF SIMILAR CASE TO COURT IN PRESENCE OF JURY—FAILURE TO REQUEST JURY TO RETIRE.**

In an action for wrongful death, that plaintiff's counsel read to the court in the jury's presence a Supreme Court opinion, including the statement of a case for wrongful death of another killed about the same time in about the same way in the same lodge, *held* not error, where no request was made for the jury to retire.

**7. REMOVAL OF CAUSES ☞79(11)—PETITION FOR REMOVAL—TIME.**

A petition for removal of a cause from a state to a federal court, on the ground of diversity of citizenship, made after trial, in the absence of fraud, collusion, or inequitable conduct, came too late.

**8. DEATH ☞103(2)—LODGE INITIATION—USE OF APPARATUS—JURY QUESTION.**

In an action against a lodge for wrongful death of plaintiff's intestate caused by acts performed during his initiation, the question of negligence in the use of apparatus or manner of its operation was for the jury.

**9. DEATH ☞61—WRONGFUL DEATH CAUSED BY LODGE INITIATION—EVIDENCE.**

In an action to recover for wrongful death of plaintiff's intestate caused by appliances used in intestate's initiation into lodge membership, it was proper for plaintiff to show that another candidate met his death in the same identical manner as plaintiff's intestate a few minutes before.

**10. DEATH ☞61—WRONGFUL DEATH CAUSED BY LODGE INITIATION—EVIDENCE.**

In an action against a lodge for the wrongful death of plaintiff's intestate by the performance of a stunt in the process of his initiation into membership, evidence that another candidate met his death in the same place and in the same identical manner within a few minutes of the same time was admissible upon the question of negligence.

**11. EVIDENCE ☞553(2) — HYPOTHETICAL QUESTIONS.**

The frame and substance of hypothetical questions to expert witnesses is a matter largely committted to the sound discretion of the trial court, and such a question is not objectionable because it omits to hypothesize every fact in evidence, but it must embrace sufficient facts to justify the opinion.

**12. EVIDENCE ☞574 — WRONGFUL DEATH CAUSED BY INITIATION—EXPERT EVIDENCE.**

In an action against a lodge for the wrongful death of plaintiff's intestate caused by a stunt performed during his initiation into its membership, the expert testimony of physicians that the application of an electrical apparatus was the approximate cause of death was not rendered inadmissible by evidence that others were given the same treatment without fatal results; such merely affecting its probative force.

**13. DEATH ☞103(3)—INITIATION IN LODGE—ASSUMPTION OF RISK—JURY QUESTION.**

Whether plaintiff's intestate, by voluntarily submitting himself for initiation into membership of defendant order, assumed the risk incident to such ceremony resulting in his death, was a question for the jury.

**14. CONSTITUTIONAL LAW ☞206(1), 245, 301 — MASTER AND SERVANT ☞11 — RECOVERY OF PUNITIVE DAMAGES AGAINST THE MASTER FOR NEGLIGENCE OF SERVANT.**

The Homicide Law (Code 1907, § 2486), permitting recovery of punitive damages against the master for negligence of servants, is not violative of the federal Constitution.

**15. DEATH ☞103(2) — WRONGFUL DEATH — EVIDENCE—JURY QUESTION.**

In an action against a lodge to recover for wrongful death of plaintiff's intestate caused during his initiation into membership, evidence *held* sufficient for submission to jury of the question of negligence either in the use or manner of use of apparatus.

**16. MASTER AND SERVANT ☞333—MASTER'S LIABILITY—EFFECT OF JUDGMENT FOR SERVANT.**

In an action against a Supreme Lodge for death of plaintiff's intestate during initiation into a local lodge, the defendant cannot be relieved on the ground that its agents have been exonerated on the question of negligence by being dismissed as defendants on the ground that the evidence was not sufficiently definite to identify them as having any part in the negligent performance.

**17. DEATH ☞103(2)—INITIATION—AUTHORITY OF SUPREME INSTRUCTOR—QUESTION FOR JURY.**

Evidence *held* sufficient for submission to jury of question as to whether or not the Supreme Instructor of the Supreme Lodge was acting within the line and scope of his authority in giving approval to initiation ceremony embracing the stunt which caused the death of plaintiff's intestate.

**18. MASTER AND SERVANT ☞332(4)—LIABILITY OF MASTER—EFFECT OF EXONERATION OF SERVANT—INSTRUCTION.**

In an action against the Supreme Lodge for wrongful death of plaintiff's intestate while being initiated into a subordinate lodge, where the liability of the principal rests upon the doctrine of respondeat superior, the refusal to instruct that exoneration of the subordinate lodge and its members from negligence, they being agents of the Supreme Lodge, must also exonerate the latter, was error.

Somerville and Gardner, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; Charles W. Ferguson, Judge.

Suit by John C. Gustin, as administrator of the estate of Christopher Gustin, deceased, against the Supreme Lodge of the World, Loyal Order of Moose, and others. From a judgment for plaintiff against the Supreme Lodge it appeals. Reversed and remanded.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Burgin & Brown and Allen & Bell, all of Birmingham, and E. J. Henning, of San Diego, Cal., for appellant.

Harsh, Harsh & Harsh and Beddow & Oberdorfer, all of Birmingham, for appellee.

GARDNER, J. Suit by appellee, as administrator of the estate of one Christopher Gustin, to recover damages for the death of his intestate, who died on the evening of July 24, 1913, while being initiated into Birmingham Lodge No. 432, Loyal Order of Moose, located in the city of Birmingham, Ala. Immediately prior to his death, Gustin had been placed upon an apparatus or appliance known as a "branding board," where he was subject to the following performance: A clip, similar to a pant guard used in bicycling, to which clip was secured a wire leading to a magneto, was placed around one ankle, the other wire of the magneto being attached to a piece of iron shaped like a razor; and Gustin, having been placed upon a board in a horizontal position, was shown a rubber stamp bearing the emblem of the Moose, and told that they were about to brand him, but, instead of using the stamp shown, the razor-shaped instrument was touched to his breast, producing an electrical shock. Gustin was immediately taken from the board, in a fainting condition, walked, with the assistance of several members of the lodge, to one end of the room, where he was placed in a reclining position, and within 15 minutes was pronounced dead. The magneto referred to was one commonly used by telephone companies, and the electrical current was generated by turning a crank by hand.

This suit was brought against the Supreme Lodge of the World, Loyal Order of Moose; Birmingham Lodge No. 432, Loyal Order of Moose; and several individuals, officers of the lodge. Upon conclusion of the evidence in the cause, the trial judge gave the affirmative charge in favor of the defendant Birmingham Lodge No. 432, for the reason, as stated by him, that it appeared that the same was an unincorporated association, and therefore judgment could not be rendered against it. The affirmative charge was also given in favor of the individual defendants, for the reason, as he stated, the evidence was insufficient to identify these defendants as having taken part in, or been responsible for, the initiation with such fatal results. The cause was submitted to the jury, as to the liability of appellant, Supreme Lodge of the World, Loyal Order of Moose, under count 1 of the complaint and pleas of general issue, contributory negligence, and assumption of risk, resulting in a judgment for the plaintiff in the sum of $15,000, from which the Supreme Lodge of the World, Loyal Order of Moose, has prosecuted this appeal.

The incident upon which the present suit is based is the same set of circumstances upon which the case of Supreme Lodge of the World, Loyal Order of Moose, v. Kenny, heretofore decided by this court, and reported in 73 South. 519, L. R. A. 1917C, 469,[1] was founded. The two men, Gustin and Kenny, having been initiated and met their death within about 15 minutes of each other, and the two actions arose out of the same accident, wherein the same apparatus was used, operated by the same individuals. A more detailed statement of the case we deem unnecessary at present, as a reference to the Kenny Case, supra, will suffice as a general outline of the facts here also presented.

[1, 2] In the Kenny Case we reached the conclusion that a subordinate lodge, in taking in and initiating candidates into the membership of the lodge, was acting as the agent of the Supreme Lodge; and that the evidence was sufficient for submission to the jury for determination that in such initiation the subordinate lodge was acting within the line and scope of its authority; and the principal, the Supreme Lodge, could be held liable though the subordinate lodge accomplished the same in an improper way or one not authorized by the principal.

Upon this appeal counsel for appellant have argued ably and strenuously that the record in the instant case differs from the Kenny Case, and that, while the conclusion in the Kenny Case might be justified by the record as it then appeared, it is not conclusive authority upon the present appeal. The points of differentiation in the record, and as argued in brief of counsel, have been very carefully noted; but they are not sufficient to change our conclusion that the evidence was sufficient for submission to the jury both as to the fact of agency, and that the subordinate lodge was acting within the line and scope of its authority, as well also the question of negligence. It is unnecessary to enter into a discussion of this question, as we consider that it was settled upon the appeal in the Kenny Case, and we are content with the ruling there made.

[3, 4] Demurrers were interposed to count 1 for misjoinder of the causes of action; in that, the cause as alleged against the Loyal Order of Moose is an action of trespass on the case, and that against the individuals is trespass, and further that relationship of the parties is not sufficiently shown, nor any duty owing to plaintiff's intestate. The complaint clearly seeks to visit a liability upon the defendants, as for a joint tort, and is in case against all the defendants, and was therefore not subject to the assignment of demurrer as for misjoinder of causes of action. City Del. Co. v. Henry, 139 Ala. 161, 34 South. 389; So. Rwy. Co. v. Arnold, 162 Ala. 570, 50 South. 293; Cent. of Ga. Rwy. Co. v. Carlock, 196 Ala. 659, 72 South. 261; Nat. Baking & Lunch Co. v. Wilson, 73 South.

[1] 198 Ala. 332.

436.[2] Nor do we think the complaint was subject to demurrer for want of showing facts from which a duty to act springs (Leach v. Bush, 57 Ala. 145), and we are also of the opinion relationship of the parties sufficiently appears.

[5] It is further urged that the complaint does not state a cause of action for the reason that the suit is founded upon what is commonly known as the Homicide Statute, (section 2486 of the Code of 1907), and fails to allege where the alleged wrongful acts were committed. While we are inclined to the view this is defensive matter, yet, as it appears without dispute that the intestate met his death in the city of Birmingham, Ala., the question presented is highly technical, and could in no manner involve any of the substantial rights of the parties, and, under the rules of this court, could in no manner avail the appellant here.

[6] It is also insisted that reversible error was committed by the trial court in permitting counsel for plaintiff to read to the court, in the presence of the jury, the decision of this court in the Kenny Case, supra, including the statement of the case. It is, of course, apparent that the questions of law determined in that case were very material in this. Upon this question the record discloses that the defendant objected to the reading of the opinion to the court in the presence of the jury, or the reading of the facts in any case, on the ground that it was improper and unnecessary. The court then said he would let the jury retire, if the facts of any case were to be read. Counsel stated to the court that he proposed to argue the case to the court, and in that argument to read the facts involved in the Kenny Case; counsel for plaintiff then called the court's attention to the fact that no request had been made by defendant for the jury to retire. The record further shows that neither before nor after defendant's attention, and the attention of the court, was called to the fact, was any request made for the jury to retire. Thereupon the court overruled the objection.

In Western Union Tel. Co. v. Benson, 159 Ala. 254, 48 South. 712, the court said:

"While it may not be permissible for counsel to read the facts from the report of another case to the jury as a part of his argument to them (Williams' Case, 83 Ala. 68, 3 South. 743), it is not a breach of propriety for counsel, in presenting the law of the case to the court, to read the report of the facts of the case in connection with the opinion. This is frequently necessary, to give the court a clear understanding of the law. It may be that the court would have the right to exclude the jury from hearing while the law is being thus discussed, and this, we find, the court finally did in the instant case."

See Stewart v. State, 78 Ala. 436; Pratt v. Southern Ry. Co., 165 Ala. 501, 51 South. 604.

We are of the opinion that, in this particular case, it would no doubt have been a much safer course for the court to have excused the jury, if it was thought any injustice might result; but the record shows that this the court offered to do, and the language of the record is properly construed as a declaration of willingness on the part of the court to have the jury retire, should counsel for defendant indicate a desire to that effect. All this being stated prior to the reading of the case to the court, and no request being made, we are of the opinion that defendant can take nothing on account of such action, and no reversible error could be predicated upon the action of the court in permitting, under these circumstances, a reading of the case.

[7] After the verdict had been rendered in this cause against the defendant Supreme Lodge of the World, Loyal Order of Moose, the said defendant presented to the court a petition seeking a removal of the cause to the federal court, showing the institution of the suit against the defendant, a corporation organized under the laws of the state of Indiana, with its principal place of business in the city of Anderson, Ind., and the filing of this suit against the defendant, together with other defendants who were residents of this state; but, at the time of the filing of the petition, defendant stands alone, as defendant in said action, the other defendants having been eliminated from the suit by the action of the trial court. This petition was denied, and the court refused to pass upon the sufficiency of the bond tendered. It therefore appears that the defendant had not only entered into the trial of the cause, but that the same had been completed, and verdict rendered at the time the petition was presented. No question of fraud, collusion, or inequitable conduct of any character, was presented. We therefore think it too clear for argument that the petition came too late, and that no error can be predicated upon the action of the court in denying the same. Bank of Maysville v. Claypool, 120 U. S. 268, 7 Sup. Ct. 545, 30 L. Ed. 632; C., N. O. & T. P. Ry. Co. v. Evans' Adm'r, 129 Ky. 152, 110 S. W. 844.

[8-10] It is also urged that reversible error was committed in permitting the plaintiff to show that, 15 minutes previous to the time plaintiff's intestate was initiated and met his death, one Kenny had been initiated with like fatal results. There was evidence tending to show that the two men were being given the same character of initiation, by the same people, and with the same apparatus, conducted in the same manner. There was also evidence tending to show that, when Kenny was placed on the "branding board," he collapsed when he was given the charge of electricity; one witness testifying:

"When he took it, his head just dropped down, * * * you could see him jerk. * * * They thought he had fainted."

[2] 198 Ala. 90.

The evidence further tended to show that, before the initiation, the applicants were given medical examinations, and certified as being sound by the medical examiner. The evidence shows that plaintiff's intestate was physically sound at the time of his initiation; that after initiation there was a discoloration something like a burn on one of the ankles, "ring like" as one of the witnesses stated, and also a discoloration something akin to a fresh burn upon his left breast.

The question of negligence, either as to the use of the apparatus or the manner of its operation, were questions of fact for the consideration of the jury from all the evidence in the case.

The defendants were permitted to prove that this initiation was given to a number of other applicants during the same evening without harmful results, and had been used on numerous occasions without injury. We are of the opinion that, it being shown that the same appliance was used, operated by the same people, and in the same manner, during the same evening, it was competent for the jury to consider that just 15 minutes previous another applicant had met his death in the identical manner in which plaintiff's intestate met his. (Sou. Rwy. Co. v. Lefan, 195 Ala. 295, 70 South. 249); and that it was further admissible, upon the question of negligence, that the condition of Kenny when taken from the board could have been held by the jury to have been a sufficient warning for reasonably prudent persons that something was wrong with the apparatus, or with the manner of its appliance or operation, and thus have prevented the placing of plaintiff's intestate upon this same "branding board."

[11, 12] It is insisted that the opinion of the medical experts was improperly admitted in evidence, and that the hypothetical questions propounded did not incorporate sufficient facts to justify a formation of an opinion on the material issues involved. It is a rule in this state that a hypothetical question is not objectionable because it omits to hypothesize every fact in evidence; but an examiner of an expert witness may lay as the basis for the opinion invited only those facts in evidence which conform to the theory he would establish; but, of course, such questions must also incorporate sufficient of the facts in evidence to fairly justify the formation of an opinion on a material issue in the case. The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court. Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 604; Pullman v. Meyer, 195 Ala. 397, 70 South. 763.

We are of the opinion there was sufficient evidence upon which to base the hypothetical question, and that these questions were so framed as to come within the rule above announced.

The medical experts were shown to be sufficiently familiar with the physical condition of deceased from examination, and also to have a general knowledge, as physicians, of the effect of electricity upon the human body. We deem it unnecessary to discuss the evidence upon which the opinion of these experts was based, but content ourselves with the statement of our conclusion that these expert witnesses of the medical profession were properly permitted to testify that, in their opinion, the application of this apparatus was the proximate cause of his (Gustin's) death. Lovelady v. B. R. L. & P. Co., 161 Ala. 494, 50 South. 96. The fact that a number of other men were given the same treatment without fatal results would not render this evidence incompetent, but merely affect its probative force before the jury.

It is against urged upon this appeal that the appellant is in fact a charitable organization, and that, as such, it is exempt from liability as to the torts of its agents. There is no material difference in the record upon this appeal and the appeal in the Kenny Case, as to this fact, and a further discussion of this question would be but a repetition.

[13] It is also urged upon this appeal that, as the plaintiff's intestate voluntarily submitted himself for initiation into this association, he assumed the risk incident to such ceremony. The question of assumption of risk and contributory negligence on the part of plaintiff's intestate was submitted by the court for the jury's consideration; and, in this action, it is too clear for discussion, there is nothing of which the appellant can complain.

[14] The statute (section 2486, Code 1907) known as the Homicide Act is attacked as violative of the federal Constitution, as it permits a recovery against the master of punitive damages for negligence of the servant. We are so fully persuaded the act is free from any such constitutional objection that we consider a discussion thereof wholly unnecessary.

[15] Appellant's counsel further argue that the verdict and judgment, without evidence to sustain it, also violates the constitutional provision as to due process of law; but the statement of counsel in brief to this effect is entirely contrary to our finding here. As previously stated, we are of the opinion the evidence was sufficient for submission to the jury upon the question of negligence in the initiation of this candidate for membership in the lodge, either in the use of the apparatus, or in the manner of its use, and was also sufficient for the jury's determination as to whether or not the local lodge was to be considered as the agent of

the appellant, acting within the line and scope of its authority.

We have entered into no discussion of the evidence, for the reason that practically the same testimony, so far as it bears upon the material aspect of the case, was before the court in the Kenny Case, supra, and there given very careful consideration; and we have thought the discussion in that case will suffice so far as this question is concerned.

[16] It is argued, however, there could be no judgment against the appellant for the reason that its agents have been exonerated on the question of negligence; and numerous authorities are cited upon this proposition. The error, however, is in assuming that the agents have been thus exonerated. Birmingham Lodge No. 432 was given the affirmative charge by the trial court upon the theory that the evidence disclosed that it was an unincorporated association, and therefore judgment could not be rendered against it. This is no reason, however, upon which to base a conclusion that the appellant, the principal, should be exonerated. The evidence further tends to show that those engaged in giving the initiation to plaintiff's intestate were members of the Birmingham Lodge, and were acting for the lodge in receiving the deceased into the order. While the individual defendants were members and officers of Birmingham Lodge, yet the trial court was of the opinion that the evidence was not sufficiently definite to identify these particular individuals as taking any part, or having any connection with the initiation of deceased at that time, and for this reason (as stated by the court) the affirmative charge was given in their behalf. We are unable to see upon what theory the appellant is entitled to exoneration upon this action of the court under the circumstances, as here disclosed.

[17] The trial court refused the charge to the effect that the authority of one Rogers, as Supreme Instructor of the Supreme Lodge of the World, Loyal Order of Moose, was set out in the constitution (a copy of which was in evidence), and that the acts of said Rogers could not legally bind the defendant corporation, if he exceeded his authority, and did or authorized the doing of a thing that was in violation of the laws of the order.

· The evidence in regard to the visit of said Rogers, as Supreme Instructor of the Supreme Lodge, to Birmingham Lodge No. 432, previous to the initiation resulting in the death of plaintiff's intestate, and his approval of this electrical "branding board" ceremony, is substantially as it was in the Kenny Case, with the exception, however, that in the Kenny Case said Rogers testified as a witness in the cause, while in the instant case his testimony was not used. The evidence shows that Rogers did visit the lodge, witnessed the initiation ceremony with the electrical apparatus used on the night of this accident, on previous occasions, and approved the same; and that the same was not used until his approval was secured: that his jurisdiction was such as was designated by the Supreme Dictator, and he could perform only such duties as the Supreme Dictator might designate. Speaking of this question in the Kenny Case, supra, this court said:

"We have hereinbefore called attention to the power and authority given under the laws of the order to the officer known as Supreme Dictator, and his authority to appoint a Supreme Instructor, whose duties included the giving of instructions in ritualistic work to subordinate lodges. The ceremony of initiation, with the electrical apparatus used on the night of the fatal accident, had been in use some time previous thereto, and had been seen and approved by the Supreme Instructor. It cannot therefore be said, as a matter of law, that the subordinate lodge did not have the apparent authority to give that particular initiatory work. Penn. Fire Ins. Co. v. Draper, 187 Ala. 103, 65 South. 923. The intestate, a stranger, a candidate for membership in the order, had, it would seem, a right to rely upon this apparent authority of the local lodge to give this particular initiation."

There was evidence tending to show that the said Rogers, as Supreme Instructor, had been sent to Birmingham by the Supreme Dictator, for the purpose of visiting this lodge to audit the books and to instruct the members in all the workings of the lodge. One of the officers of the lodge testified there was a communication, by letter, from the Supreme Dictator informing the lodge of the appointment of Mr. Rogers as Supreme Instructor of the Loyal Order of Moose, and that he would be sent to visit the lodge to audit the books and to instruct them in all the workings of the lodge. It is objected, however, by the appellant, that the letter was not offered in evidence, and was not a matter collateral to the issue, but was of such a nature that secondary proof of its contents is inadmissible, and that therefore this testimony was incompetent. As to whether or not the contents of such letter related to collateral matter permitting secondary proof without requiring production of the original, we need not decide, for, as we read the record, this evidence was offered without objection. True, just previous thereto, as shown on page 65 of the record, the witness was asked whether or not the lodge had any communication with reference to the coming of Mr. Rogers. But this question did not indicate whether the communication was oral or in writing. Objection was made to this question on numerous grounds, but was overruled. The witness then answered: "Yes, sir; we had a communication." The question asked was not subject to objection in its form, as, clearly, the witness could testify as to whether or not there was communication. Subsequent testimony of witness disclosed that this communication was by letter. Reversible error therefore could

not be predicated upon the action of the court in overruling the objection thereto, and the objection was not renewed as to this testimony, and no.motion made to exclude it.

There is other evidence as to the duties of the Supreme Instructor, not necessary to further note. But we are of the opinion that the evidence in the record was sufficient for submission to the jury of the question as to whether or not the Supreme Instructor was acting within the line and scope of his authority in giving approval to this initiation ceremony.

[18] Insistence is made that reversible error was committed in the refusal to the defendant of the following written charges:

"If the jury believes from the evidence that the Birmingham Lodge No. 432, Loyal Order of Moose, were not negligent in and about the death of the plaintiff's intestate, the court charges you that you cannot find a verdict against the Supreme Lodge of the World, Loyal Order of Moose.

"The court charges the jury that if under the law and the evidence in this case the Birmingham Lodge No. 432, Loyal Order of Moose, had not been shown to have been guilty of negligence in and about the alleged death of the plaintiff's intestate, I charge you that the Supreme Lodge of the World, Loyal Order of Moose, would not be liable."

The following authorities are cited to the effect that in actions of this character, where the liability of the principal rests upon the doctrine of respondeat superior, exoneration of the agent must also result in exoneration of the principal: Doremus v. Root, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649; Stevick v. Northern Pac. Ry. Co., 39 Wash. 501, 81 Pac. 999; N. O. & N. R. Co. v. Jopes, 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919; McGinnis v. Chicago, etc., Ry. Co., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, 9 Ann. Cas. 656; White v. International Text-Book Co., 150 Iowa, 27, 129 N. W. 338; Hobbs v. Ill. Cent. R. R. Co., 171 Iowa, 624, 152 N. W. 40, L. R. A. 1917E, 1023; Portland Gold Min. Co. v. Stratton's Ind., 158 Fed. 63, 85 C. C. A. 393, 16 L. R. A. (N. S.) 677; Loveman Co. v. Bayless, 128 Tenn. 307, 160 S. W. 841, Ann. Cas. 1915C, 187.

The majority of the court, consisting of Chief Justice ANDERSON, Justices McCLELLAN, MAYFIELD, SAYRE, and THOMAS, are of the opinion that the refusal of these charges was error, for which the judgment must be reversed.

The writer, with whom Justice SOMERVILLE concurs, entertains the view that the refusal of these charges was not reversible error, for the reason that the general rule of law was substantially and fairly given to the jury in the court's general charge, and therefore, under the provisions of the Acts of 1915, p. 815, a reversal should not be had upon this action of the court. We further

entertain the view that the charge was properly refused as it pretermits any negligent conduct on the part of Rogers, the Supreme Instructor, in giving approval to this form of initiation, and in advising the lodge to make use thereof. This question has heretofore been treated, and we do not consider it necessary to enter into a further discussion, as the holding of the majority results in a reversal of the cause. The writer and Justice SOMERVILLE therefore dissent.

For the errors as above indicated, the judgment is reversed, and the cause remanded.

Justice McCLELLAN is of the opinion the reversal should be rested upon still another ground, which he will state in a separate opinion.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SAYRE, and THOMAS, JJ., concur.

SOMERVILLE and GARDNER, JJ., dissent.