# NEW ORLEANS AND NORTHEASTERN RAILROAD COMPANY *v.* JOPES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 104. Argued November 24, 1891. — Decided December 7, 1891.

When a bill of exceptions is signed during the term, and purports to contain a recital of what transpired during the trial, it will be presumed that all things therein stated took place at the trial, unless from its language the contrary is disclosed.

The law of self-defence justifies an act done in honest and reasonable belief of immediate danger; and, if an injury be thereby inflicted upon the person from whom the danger was apprehended, no liability, civil or criminal, follows.

If an act of an employé be lawful and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor.

A railroad company is not responsible for an injury done to a passenger in one of its trains by the conductor of the train, if the act is done in self-defence against the passenger and under a reasonable belief of immediate danger.

*New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637, distinguished.

THE court stated the case as follows:

On July 24, 1886, the defendant in error, plaintiff below, was a passenger on the train of the plaintiff in error. While such passenger, and at Nicholson station in Hancock County, Mississippi, he was shot by Carlin, the conductor, and seriously injured. For such injury, he brought his action in damages in the Circuit Court of that county. The case was regularly removed to the United States Circuit Court for the Southern District of Mississippi; and a trial resulted in a verdict and judgment on May 15, 1888, in his favor, for the sum of $9500, to reverse which judgment the defendant sued out this writ of error. Of the fact of the shooting by the conductor, and the consequent injuries, there was no dispute. The testimony in the case was conflicting as to some matters, and there was

testimony tending to show that the plaintiff approached the conductor with an open knife in his hand, and in a threatening manner, and that the conductor, fearing danger, shot and wounded the plaintiff in order to protect himself. The bill of exceptions recited that in its general charge " the court instructed the jury that if the evidence showed that the plaintiff was a passenger on the train, and that he was shot and wounded by the conductor whilst he was such passenger and whilst prosecuting his journey, and such shooting was not a necessary self-defence, the plaintiff was entitled to recover compensatory damages; but if the jury believe the plaintiff, when shot, was advancing on the conductor or making hostile demonstrations towards him with a knife in such a manner as to put the conductor in imminent danger of his life or of great bodily harm, and that the conductor shot plaintiff to protect himself, the plaintiff was not entitled to recover; but if it appeared that the conductor shot the plaintiff, whilst such passenger and prosecuting his journey, wantonly and without any provocation at the time, then the jury might award exemplary damages." And further, that, "responding to the request of defendant that the court should instruct the jury that if they believed from the evidence that when Carlin shot the plaintiff, he, Carlin, had reasonable cause to believe, from Jopes's manner and attitude, that he, Jopes, was about to assault Carlin with the knife, and that it was necessary to shoot him to prevent great bodily harm from Jopes, then that the jury should find for defendant, whether Jopes was intending to do Carlin great bodily harm or not, the court declined to instruct, but instructed that, in that state of the case, if Carlin shot under the mistaken belief, from Jopes's actions, that he was in danger of great bodily harm then about to be done him by Jopes, when in fact Jopes was not designing or intentionally acting so as to indicate such design, the plaintiff should be entitled to compensatory damages and not punitive damages." To this last instruction an exception was taken, and this presented the substantial question for consideration.

*Mr. Edward Colston* (with whom was *Mr. John W. Fewell* on the brief) for plaintiff in error.

*Mr. Calderon Carlisle* for defendant in error.   (*Mr. Marcellus Green* and *Mr. S. S. Calhoon* filed a brief for same.)

It is nowhere shown that the exceptions, or any of them, were taken *at the trial,* which is a fatal defect.   *Walton* v. *United States,* 9 Wheat. 651; *French* v. *Edwards,* 13 Wall. 506; *Brown* v. *Clarke,* 4 How. 4; *Sheppard* v. *Wilson,* 6 How. 260; *Phelps* v. *Mayer,* 15 How. 160.   Nor is it anywhere shown that any exception was taken *while the jury were at the bar.*.  *United States* v. *Breitling,* 20 How. 252; *Barton* v. *Forsyth,* 20 How. 532; *Phelps* v. *Mayer,* 15 How. 160.

The grounds of the objection are not given in any instance. *Coddington* v. *Richardson,* 10 Wall. 516.   If the exception to the instructions of the court be regarded as taken to *all* the propositions set forth in the instructions, the exception must be overruled if *any one* of the propositions be sound.   *Johnston* v. *Jones,* 1 Black, 209; *Rogers* v. *The Marshal,* 1 Wall. 644; *Harvey* v. *Tyler,* 2 Wall. 328.

The verdict was clearly right on the evidence, and there is no probability of any difference in another trial with this evidence in; and it is highly improbable that it had the effect to produce or modify the verdict.   Its effect in producing the verdict, or making it larger, is imaginary.   *McLanahan* v. *Universal Ins. Co.,* 1 Pet. 170.   It was competent in any point of view, as a legal proposition, both as part of the *res gestæ* of the shooting, and because it was the verbal act of the agent of the company, as its conductor, made to a passenger, and while the contract of transportation still existed between the passenger and the railroad company, and while the railroad conductor was still in the discharge of his functions, as such conductor, and agent of the company, towards that passenger. *New Jersey Steamboat Co.* v. *Brockett,* 121 U. S. 637.

But the principles applicable to the trial of Carlin upon indictment for the assault and those governing the case at bar differ widely.

The cause of action was breach of the contract to carry safely.   The defence sought excuse for the non-performance, in that plaintiff had abandoned the contract and made an

assault upon the servant of defendant to whose care he was committed, and that, therefore, defendant could not perform by reason of plaintiff's own act. Under this the facts must exist to excuse the breach. Not that the servant had reasonable cause to believe they existed, but that they existed in fact. Under the criminal law if there is a reasonable doubt it suffices to excuse, but the non-performance of contracts cannot be excused upon beliefs. The reasonable ground for belief has no existence, even in estoppel *in pais.*

The doctrine contended for that the court will institute a comparative blame inquiry, and, if the corporation or master was less to blame than the passenger, though the servant may be more to blame than the passenger, the master will be excused, is as surprising as it is untenable. Under it a corporation, being incorporeal, could never be liable, for it can only work through servants. *Qui facit per alium facit per se* would exist no longer in jurisprudence if this was the law.

The conductor was the company, *Chicago, Milwaukee &c. Railway* v. *Ross*, 112 U. S. 377, 390, and during the journey for which Jopes had taken passage he was charged with the duty of carrying him safely and protecting him. Any declarations made by the conductor during the journey were competent, just as those of any personal master would have been.

If the rights are to be measured by the criminal law applicable, the declarations of Carlin were competent. *Kendrick* v. *The State*, 55 Mississippi, 436.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

A preliminary question is raised by counsel for the defendant in error. It is insisted that the bill of exceptions does not show that this exception was taken at the trial, and while the jury was at the bar, and therefore not in time. In support of this contention several authorities are cited. While it is doubtless true that if the exception was not taken until after the trial it would be too late, and to that effect are the authorities, yet we do not think the record shows that such was the

fact in this case. The trial commenced on the 14th, and was concluded on the 15th, and the bill of exceptions was sealed and signed on the 16th of May. The motion for a new trial was not overruled until the 26th. The bill of exceptions recites in the ordinary form the coming on of the case to trial, the empanelling of a jury, the testimony offered and the instructions given and refused. In respect to one matter of testimony, the bill of exceptions recites: "Whereupon the court refused to allow the testimony, to which ruling the defendant excepted." So, following the recital in respect to the last matter of instructions, is the statement "to which defendant excepted." It is true the words used are not "then and there excepted," neither is it said that the court "then and there instructed;" but as the bill purports to be a recital of what took place on the trial, it is to be assumed that the instructions were given, and the exceptions taken, during and as a part of the trial. The statement as to the exception follows that as to the instructions, and the only fair and reasonable intendment from the language is that as the one was given, so the other was taken, at the trial. The same form of recital was pursued in the case of *United States* v. *Breitling*, 20 How. 252, and held sufficient. In the case of *Barton* v. *Forsyth*, 20 How. 532, it appeared that after the verdict and judgment the defendant filed a motion, supported by affidavit, which was overruled. Following the recital of this fact, the record added, "to all which decisions, rulings and instructions defendant then and there excepted;" and it was held that such recital showed that the exceptions were taken at the time of the overruling of the motion. In the case of *Phelps* v. *Mayer*, 15 How. 160, the verdict was rendered on the 13th of December, and the next day the plaintiff came into court and filed his exceptions, and there was nothing to show that any exception was reserved pending the trial. In *Brown* v. *Clarke*, 4 How. 4, it was a matter of doubt whether the exceptions were taken to the instructions or to the refusal to grant a new trial. Of course, in the latter case they would not have been available. In the case of *Walton* v. *United States*, 9 Wheat. 651, it appeared that the exception was not taken until after the judgment.

The reasoning of all these cases makes in favor of the sufficiency of this bill of exceptions, and it may be laid down as a general proposition, that where a bill of exceptions is signed during the term, purporting to contain a recital of what transpired during the trial, it will be assumed that all things therein stated took place at the trial, unless from its language the contrary is disclosed. We hold, therefore, that the record shows that the exception to this instruction was duly taken, and pass to a consideration of the principal question, and that is, whether such instruction contains a correct statement of the law applicable.

Its import is, that if the conductor shot when there was in fact no actual danger, although, from the manner, attitude and conduct of the plaintiff, the former had reasonable cause to believe, and did believe, that an assault upon him with a deadly weapon was intended, and only fired to protect himself from such apprehended assault, the company was liable for compensatory damages. In this view of the law we think the learned court erred. It will be scarcely doubted that if the conductor was prosecuted criminally, it would be a sufficient defence that he honestly believed he was in imminent danger, and had reasonable ground for such belief. In other words, the law of self-defence justifies an act done in honest and reasonable belief of immediate danger. The familiar illustration is, that if one approaches another, pointing a pistol and indicating an intention to shoot, the latter is justified by the rule of self-defence in shooting, even to death; and that such justification is not avoided by proof that the party killed was only intending a joke, and that the pistol in his hand was unloaded. Such a defence does not rest on the actual, but on the apparent facts and the honesty of belief in danger. By the Revised Code of Mississippi (1880) section 2878, (and this section is common to the homicide statutes of several States,) homicide is justifiable when committed in the lawful defence of the person when there shall be reasonable ground to apprehend a design to do some great personal injury, and imminent danger of such design being accomplished. In 1 Wharton's Criminal Law, 9th ed. section 488, the author says: " It is conceded on

all sides that it is enough if the danger which the defendant seeks to avert is *apparently* imminent, irremediable and actual." *Bang* v. *The State*, 60 Mississippi, 571 ; *Shorter* v. *The People*, 2 N. Y. (2 Comstock) 193; *Logue* v. *Commonwealth*, 38 Penn. St. 265. And the same rule of immunity extends to civil as to criminal cases. If the injury was done by the defendant in justifiable self-defence, he can neither be punished criminally nor held responsible for damages in a civil action. Because the act was lawful, he is wholly relieved from responsibility for its consequences. 3 Bl. Com. 121. The case of *Morris* v. *Platt*, 32 Connecticut, 75, fully illustrates the extent to which immunity goes. In that case it appeared that the defendant when assaulted had fired in self-defence, and, missing the assailant, had wounded an innocent bystander, and the court held that the party thus assailed was free from both civil and criminal liability. The act which he had done was lawful and without negligence, and no one, not even a third party, not an assailant, but an innocent bystander, could make him answer in damages for the injury occasioned thereby.

It would seem on general principles that if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity. That such is the ordinary rule is not denied; but it is earnestly insisted by counsel that where the employer is a common carrier, and the party injured a passenger, there is an exception, and the proposition is laid down that the contract of carriage is broken, and damages for such breach are recoverable, whenever the passenger is assaulted and injured by an employé without actual necessity therefor. It is urged that the carrier not only agrees to use all reasonable means to prevent the passenger from suffering violence at the hands of third parties, but also engages absolutely that his own employés shall commit no assault upon him. We quote from the brief the contention:

" The cause of action was breach of the contract to carry safely. The defence sought excuse for the non-performance, in that plaintiff had abandoned the contract and made an assault upon the servant of defendant to whose care he was

committed, and that, therefore, defendant could not perform by reason of plaintiff's own act. Under this the facts must exist to excuse the breach. Not that the servant had reasonable cause to believe they existed, but that they existed in fact. Under the criminal law if there is a reasonable doubt it suffices to excuse, but the non-performance of contracts cannot be excused upon beliefs."

Special reference is made to the case of *Steamboat Co.* v. *Brockett*, 121 U. S. 637, in which this court held that " a common carrier undertakes absolutely to protect its passengers against the misconduct or negligence of its own servants, employed in executing the contract of transportation, and acting within the general scope of their employment;" a proposition which was fortified in the opinion by reference to several authorities. But it will be noticed that that which, according to this decision, the carrier engages absolutely against is the misconduct or negligence of his employé. If this shooting was lawfully done, and in the just exercise of the right of self-defence, there was neither misconduct nor negligence. It is not every assault by an employé that gives to the passenger a right of action against the carrier. Suppose a passenger is guilty of grossly indecent language and conduct in the presence of lady passengers, and the conductor forcibly removes him from their presence, there is no misconduct in such removal; and, if only necessary force is used, nothing which gives to the party any cause of action against the carrier. In such a case, the passenger, by his own misconduct, has broken the contract of carriage, and he has no cause of action for injuries which result to him in consequence thereof. He has voluntarily put himself in a position which casts upon the employé both the right and duty of using force. There are many authorities which in terms declare this obligation on the part of the carrier, and justify the use of force by the employé, although such force, reasonably exercised, may have resulted in injury. But if an employé may use force to protect other passengers, so he may to protect himself. He has not forfeited his right of self-defence by assuming service with a common carrier; nor does the common carrier engage aught

against the exercise of that right by his employé. There is no misconduct when a conductor uses force and does injury in simply self-defence; and the rules which determine what is self-defence are of universal application, and are not affected by the character of the employment in which the party is engaged. Indeed, while the courts hold that the liability of a common carrier to his passengers for the assaults of his employés is of a most stringent character, far greater than that of ordinary employers for the actions of their employés, yet they all limit the liability to cases in which the assault and injury are wrongful. Upon this general matter, in 2 Wood's Railway Law, 1199, the author thus states the rule: "In reference to the application of this rule, so far as railroad companies and carriers of passengers are concerned, it may be said that they are not only bound to protect their passengers against injury and unlawful assault by third persons riding upon the same conveyance, so far as due care can secure that result, but they are bound absolutely to see to it that no unlawful assault or injury is inflicted upon them by their own servants. In the one case their liability depends upon the question of negligence, whether they improperly admitted the passenger inflicting the injury upon the train, while in the other the simple question is whether the act was unlawful." And in Taylor on Private Corporations, sec. 347, 2d ed., it is said: "While a carrier does not insure his passengers against every conceivable danger, he is held absolutely to agree that his own servants engaged in transporting the passenger shall commit no wrongful act against him. . . . Recent cases state this liability in the broadest and strongest language; and, without going beyond the actual decisions, it may be said that the carrier is liable for every conceivable wrongful act done to a passenger by its train hands and other employés while they are engaged in transporting him, no matter how wilful and malicious the act may be, or how plainly it may be apparent from its nature that it could not have been done in furtherance of the carrier's business." See also *Peavy* v. *Georgia Railroad & Banking Co.*, 81 Georgia, 485; *Harrison* v. *Fink*, 42 Fed. Rep. 787.

In most of the cases in which an injury done by an employé has been the cause of the litigation, the defence has been, not that the act of the employé was lawful, but that it was a wanton and wilful act on his part, outside the scope of his employment, and therefore something for which his employer was not responsible. And if the act was of that character, the general rule is that the employé alone, and not the employer, is responsible. But, owing to the peculiar circumstances which surround the carrying of passengers, as stated, a more stringent rule of liability has been cast upon the employer; and he has been held liable although the assault was wanton and wilful, and outside the scope of the employment. Noticeable instances of this kind are the cases of *Craker* v. *Chicago & Northwestern Railway*, 36 Wisconsin, 657, in which, when a conductor had forcibly kissed a lady passenger, the company was held responsible for the unlawful assault; and *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202, in which, when a brakeman had committed a gross and offensive assault upon an invalid passenger, the company was held liable in damages.

But here the defence is that the act of the conductor was lawful. If the immediate actor is free from responsibility because his act was lawful, can his employer, one taking no direct part in the transaction, be held responsible? Suppose we eliminate the employé, and assume a case in which the carrier has no servants, and himself does the work of carriage; should he assault and wound a passenger in the manner suggested by the instruction, it is undeniable that if sued as an individual he would be held free from responsibility, and the act adjudged lawful. Can it be that if sued as a carrier for the same act a different rule obtains, and he be held liable? Has he broken his contract of carriage by an act which is lawful in itself, and which as an individual he was justified in doing? The question carries its own answer; and it may be generally affirmed that if an act of an employé be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor.

For the error of the court in respect to this instruction the judgment must be

*Reversed, and the case remanded for a new trial, and it is so ordered.*