J. HOBBS, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY et al., Appellants.

**MASTER AND SERVANT:** Exoneration of Servant Ipso Facto Exoneration of Master—Inconsistent Verdicts. If the employee who actually does a thing is free from liability therefor, his employer must also be free from liability. Stated in another way: If the master is responsible for the act in question *solely* under the doctrine of *respondeat superior,* then an exoneration of the servant, who actually did the act *ipso facto* exonerates the master.

PRINCIPLE APPLIED: Plaintiff was one of several shippers who left their stock train, boarded a passenger train, and insisted on riding thereon under the transportation furnished them as caretakers. As they refused to leave the train or secure tickets, the

conductor called two employees of the company who, as special policemen, were employed in guarding the property of the company, and the stockmen were compelled to leave the train. Plaintiff's action was against the company and both of said employees. He claimed (a) that the two employees had assaulted and severely injured him without cause, and (b) that the company had failed in its duty to protect him as a passenger. The jury returned a verdict in favor of both of the employees and against the company. *Held,* this verdict, *followed by judgment thereon,* likewise exonerated the company from all responsibility.

*Appeal from Cherokee District Court.*—HON. WILLIAM HUTCHINSON, Judge.

SATURDAY, APRIL 10, 1915.

REHEARING DENIED MONDAY, OCTOBER 4, 1915.

ACTION for damages consequent on an alleged unlawful ejectment from defendant's train resulted in judgment against defendant, from which it appeals.—*Reversed.*

*McCulla & McCulla* and *Healy, Burnquist & Thomas,* for appellee.

*Molyneaux & Maher* and *Helsell & Helsell,* for appellants.

LADD, J.—The plaintiff and several others were shippers of live stock over defendant's road from Cherokee county to Chicago, Ill., December 17, 1911, and were accompanying the stock as caretakers on transportation furnished by defendant company. The caboose in which they rode was somewhat crowded and when they reached Ft. Dodge, at 3 o'clock A. M., they obtained a lunch and later boarded a passenger train which was about to leave for their destination. The conductor informed them that they must have tickets and that their transportation on the stock train would not be received, and that they should get off and get tickets. In the absence of any response, he said, "Must I

MASTER AND SERVANT: exoneration of servant *ipso facto* exoneration of master: inconsistent verdicts.

get an officer and put you off?'' and then went out and returned with defendants Core and Gressley, whereupon the conductor directed them to put off the 11 or 12 stockmen, including plaintiff. One of them was assisted and with him all started for the exit. There was some parley about plaintiff's going back for his overcoat and, when he reached the platform, he backed from the car and was trying to put an overshoe on when, according to his story, Core put his hands on his shoulder and pushed him down the steps, he striking the brick walk with his shoulder and head, and they then pounded him with their billies and otherwise mistreated him. On the other hand, the evidence tended to show that plaintiff resisted at the door and that Core acted in self-defense. Core and Gressley had been sworn in as policemen by the police judge and given billies and stars by the chief of police, but were employed by the defendant company in guarding its property from 6 o'clock P. M. to 6 o'clock A. M. They had completed the watch and were in a shop on their way home when met by the conductor and the assistant trainmaster who, ignorant of their relation to the company and supposing them to be policemen, arranged with them to eject the plaintiff and others from the train, which they did under the direction of the conductor, as stated. It will be seen that the wrongs, if any, done to plaintiff were by the defendants Core and Gressley and the company is liable therefor, if at all, only (1) because of its being responsible as their superior as principal or master, they being agents or servants, or (2) because of a breach of its duty to protect passengers against the wrongs, if any, such as they committed. It may be conceded that, as a carrier of passengers, the company was required to exercise toward plaintiff the highest degree of care for his safety and protection (though it is doubtful whether he ever became a passenger), *Ray v. Chicago & N. W. R. Co.*, 163 Iowa 430; but if remiss therein, and there was a breach of this duty, it was in directing Core and Gressley to commit on him the wrongs complained of. These were the

only ones from which plaintiff claimed to have suffered, and
if no wrongs were committed by them, then nothing remained
for which the company could have been held responsible.
The jury, however, returned a verdict for defendants Core
and Gressley but against the company. The latter moved
that judgment be entered in its favor because of the exonera-
tion of the other defendants. The motion was overruled.
Thereupon, the company moved for a new trial, and this
motion was overruled and judgment entered on the verdict
in favor of Core and Gressley and against the company.
Counsel for the company contend that the exoneration of its
co-defendants necessarily relieves it of all responsibility, and
that there was error in assessing against it any damages
whatever. It seems impossible to avoid this conclusion. The
responsibility of the company was necessarily dependent
upon the culpability of its co-defendants, who were the imme-
diate actors. And yet in the same action by the same plain-
tiff for the same wrongs, they were adjudged not culpable
and the company adjudged culpable, though it was without
fault save as responsible for the acts of its co-defendants.
The trial proceeded on the theory that it was essential, in
order to recover, that the jury find Core and Gressley to have
been employees or agents of the company. If they were such,
then the company was only liable as their superior and not
because of anything it did by or through any other. As
said in *Doremus v. Root*, 23 Wash. 710, 715, (63 Pac. 572;
54 L. R. A. 649), "Joint tort feasors are liable to the injured
person (other than that he may have but one satisfaction) as
if the act causing the injury was the separate act of each of
them, and they have, except in certain special cases, no right
of contribution among themselves. But the defendants in
this character of actions are in no sense joint tort feasors, nor
does their liability to the plaintiff rest upon the same or like
grounds. The act of an employee, even in legal intendment,
is not the act of his employer unless the employer either
previously directs the act to be done or subsequently ratifies

it. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of *respondeat superior*— the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compelled to answer in damages therefor, he can recover over against the employee.''

The principle so clearly expressed has been approved by this court in *White v. International Text Book Co.*, 150 Iowa 27, followed in *Dunshee v. Standard Oil Co.*, 165 Iowa 625, and is sustained by the overwhelming weight of authority. *Portland Gold Mining Co. v. Stratton's Independence, Limited,* et al., 158 Fed. 63 (16 L. R. A. (N. S.) 677); *Hill v. Bain,* 15 R. I. 75 (2 Am. St. 873); *City of Anderson v. Fleming,* 160 Ind. 597 (66 L. R. A. 119); *King v. Chase,* 15 N. H. 9 (41 Am. D. 675); *Gardner v. Southern Ry.,* (S. C.) 43 S. E. 816; *McGinnis v. Chicago, R. I. & P. Ry.,* 200 Mo. 347 (9 L. R. A. (N. S.) 880; 118 Am. St. 661); *Hayes v. Chicago Tel. Co.,* 218 Ill. 414 (2 L. R. A. (N. S.) 764); *Ferguson v. Truax,* 132 Wis. 478 (13 Am. & Eng. Ann. Cases 1092); *Muntz v. Algiers & G. St. Ry. Co.,* 116 La. 236 (40 So. 688); *Chicago, St. P. M. & O. Ry. v. McManigal,* 73 Neb. 580.

Where the real actor (who is none the less liable personally because acting for another) is not guilty, it necessarily follows that the party for whom he acted cannot be. In *Sparrow v. Bromage,* 83 Conn. 27 (27 L. R. A. (N. S.) 209), the verdict was against two tort feasors and it was set aside as against one and allowed to stand against the other, against whom the evidence was sufficient. The general rule is that where one has received an actionable injury at the hands of two or more persons acting in concert or acting

independently of each other, if their acts unite in causing a single injury, all of the wrongdoers are severally liable to the person injured for the full amount of damages occasioned thereby, and he may enforce claim therefor in an action against all of them jointly, or any one of them severally, or against any number of them less than the whole. While the wrong committed is the joint wrong of the several parties participating, it is, in contemplation of law, the several wrongs of each of them. Cooley on Torts (2d Ed.) p. 153. The jury may find against all or in favor of some and against others, and on this ground the ruling by which a new trial was granted to one and denied to another in the last cited case was approved. See *Young v. Gormley,* 119 Iowa 546. There is a wide distinction between the ordinary actions for tort, where all defendants participated in the wrongful act occasioning the injury, and actions like that before us, where one or more is liable because of having committed the act, and the other only by operation of law by virtue of its relation to its co-defendants and the injured person. Here the company is not liable as a joint wrongdoer, as it did nothing save through others, but because of its responsibility for the acts of its co-defendants.

In *Portland Gold Mining Co. v. Stratton's Independence, supra,* the authorities are reviewed by Van Devanter, J., and the conclusion reached that:

"It is settled by repeated decisions that the general rule that one may not have the benefit of a judgment as an estoppel unless he would have been bound by it had it been the other way is subject to recognized exceptions, one of which is that, in actions of tort, such as trespass, if the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not

have been bound" by it had it been the other way. And we think it could not well be otherwise, for, when the plaintiff has litigated directly with the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible. To such a case the maxim, '*Interest rei publicae ut sit finis litium*,' may well be applied.''

There are decisions to the contrary but the grounds on which they rest are not persuasive. See *Schumpert v. Southern R. Co.* (S. C.), 43 S. E. 813.

The theory of these cases seems to be that in some way the master is a joint tort feasor, even though liable only because responsible for the act of the servant. In *Carson v. Southern R. Co.* (S. C.) 46 S. E. 525, the verdict was for the servants and against the railroad company, and it was urged that, as the servants who were the sole actors had been found to have been guilty of no negligence, there was none to charge the company with; but the court held that (a) the servants are not held responsible personally because such torts were committed in the master's service—''One may be taken and the other left,''—and (b) ''We do not think that a verdict in favor of the servants turns the master loose thereby.'' In *Gulf, etc., Ry. Co. v. James,* 73 Tex. 12 (15 Am. St. 743), it was thought that the inconsistency involved in such a verdict alone would not warrant a new trial. The vital proposition that if the servants, as the real actors, are found to have been without fault, the master could not be held responsible for a wrong found not to have been perpetrated, has not been met in any of these decisions, but rather avoided by specious reasoning. We are content with the rule as heretofore announced in *White v. International Text Book Co., supra.*

Counsel for appellee argue, however, that, even conceding the rule as contended, the company was required, as a common carrier, to have exercised the highest degree of care for plaintiff's safety and protection, and the verdict is a finding that there was a breach in this duty regardless of whether its co-defendants were employees or strangers. This, however, does not eliminate the consequence of such a verdict; for, if there was a breach of duty in not shielding plaintiff from wrongdoers, it was in the expulsion from the train by its co-defendants, acting in its behalf as servants or employees in the manner disclosed by the evidence, and the jury found that therein said co-defendants were not wrongdoers. The law fixing the responsibility of the company differs somewhat, but its liability is determined by what the real actors actually did, and the doctrine of *respondeat superior* was quite as applicable. This precise question was before the Supreme Court of the United States in *New Orleans & N. E. Ry. v. Jopes*, 142 U. S. 18 (35 L. Ed. 919). Jopes was a passenger on the company's train, was shot by Carlin, the conductor, and obtained a judgment against the company, to reverse which an appeal was taken. There was testimony tending to show that the shooting was in self-defense, and the court instructed the jury, in substance, that, if the conductor shot when there was in fact no danger, though he had reason to believe and did believe that an assault on him with a deadly weapon was intended and only fired to protect himself from such assault, the company was liable, and refused to instruct that there would be no liability if the shot was fired in the reasonable apprehension of loss of life or great bodily harm, even though there may have been no actual danger. The ruling was reversed, the court speaking through Brewer, J., saying:

"It would seem on general principles that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled

to a like immunity. That such is the ordinary rule is not denied; but it is earnestly insisted by counsel that, where the employer is a common carrier, and the party injured a passenger, there is an exception, and the proposition is laid down that the contract of carriage is broken, and damages for such breach are recoverable, whenever the passenger is assaulted and injured by an employe without actual necessity therefor. It is urged that the carrier not only agrees to use all reasonable means to prevent the passenger from suffering violence at the hands of third parties, but also engages absolutely that his own employes shall commit no assault upon him. . . . If this shooting was lawfully done, and in the just exercise of the right of self-defense, there was neither misconduct nor negligence . . . The defense is that the act of the conductor was lawful. If the immediate actor is free from responsibility because his act was lawful, can his employer, one taking no direct part in the transaction, be held responsible? Suppose we eliminate the employe, and assume a case in which the carrier has no servants and himself does the work of carriage; should he assault and wound a passenger in the manner suggested by the instruction, it is undeniable that, if sued as an individual, he would be held free from responsibility, and the act adjudged lawful. Can it be that if sued as a carrier for the same act a different rule obtains, and he be held liable? Has he broken his contract of carriage by an act which is lawful in itself and which as an individual he was justified in doing? The question carries its own answer; and it may be generally affirmed that if an act of an employe be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor.''

The acts for which damages were claimed were those of Core and Gressley. The evidence as to whether they were guilty of any wrongdoing was in conflict. The jury exonerated them and, in doing so, necessarily exonerated the com-

pany, having found no wrong to have been committed by them, and it follows there were none for which the company could be adjudged responsible.

We are not saying that, had plaintiff applied for a new trial because of the inconsistency of the verdict, relief ought not to have been granted. What we do say is that entering judgment in favor of Core and Gressley eliminated all liability of the company and the motion for judgment dismissing the petition should have been sustained.—*Reversed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.