**UNION TRUST CO. OF CLEVELAND, OHIO, et al. v. WOODROW MFG. CO. et al.**

**No. 9557.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1933.

Casper Schenk, of Des Moines, Iowa (Charles S. Bradshaw and Rex H. Fowler, both of Des Moines, Iowa, on the brief), for appellants.

Robert J. Bannister, of Des Moines, Iowa (Henry C. Korf, of Newton, Iowa, and Stipp, Perry, Bannister & Starzinger, of Des Moines, Iowa, on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

This case has been here before. 48 F.(2d) 194, 197. It is an action by trustees (appellants here and plaintiffs in the trial court) under a mortgagee's declaration of trust to recover against appellees (defendants in the trial court) damages for waste of mortgage security.

The parties will be designated as in the trial court.

Upon the former trial a verdict was instructed for all the defendants. This court held that action to be error and reversed and remanded the case for a new trial. This time the trial court directed a verdict for defendants Van Niewaal, Van Zante, Vogelaar,

Awtry, and Vanden Berg. The jury returned a verdict in favor of defendants Van Gorp and Woodrow Washing Machine Company.

A brief statement of the facts is necessary.

On January 21, 1926, the Woodrow Manufacturing Company, which was engaged in manufacturing washing machines at Newton, Iowa, executed to R. W. Sheffer a promissory note in the sum of $37,000, secured by a mortgage on certain property in Newton, Iowa, consisting of real estate and the buildings and equipment thereon, used as a washing machine manufacturing plant. Said note and mortgage were duly assigned by Sheffer to the plaintiff Union Trust Company of Cleveland under a trust instrument. A portion of this real estate was subject to a prior mortgage of $40,000 given to the Central State Bank of Des Moines, Iowa. In July, 1926, the personal defendants secured control of a majority of the stock of the Woodrow Manufacturing Company (sometimes herein called the Newton Company). On August 3, 1926, they entered into a contract for the purchase of its property, which contract referred to two former agreements, one relating to the purchase of shares of stock of the Woodrow Manufacturing Company, which was canceled by the new contract; the other relating to the removal of the plant and business to Pella, Iowa, which was confirmed and ratified by the new contract. In the meantime these defendants had formed the Woodrow Washing Machine Company at Pella (sometimes called the Pella Company), which was duly incorporated under the laws of Iowa, and the contract of August 3, 1926, was on said 3d day of August, 1926, duly assigned to said Woodrow Washing Machine Company. April 21, 1927, this Pella Company entered into another contract with the Newton Company, which, referring to the contract of August 3, 1926, recited that to complete the sale of the stock of the Pella Company it was necessary to dispose of the real estate holdings of the Newton Company, and to remove the plant to the city of Pella, and it was agreed therein that in view of the fact that the Newton Company might have to pay a certain amount of the Sheffer mortgage, in order to obtain the right to remove the machinery and equipment in said building and to have the same released from said mortgage, that any amount which the second parties might pay to obtain the release of said machinery and equipment, not to exceed $12,000, should be credited upon the purchase price of the property described in the contract of August 3, 1926. On July 1, 1927, the Pella Company, acting through its officers, removed all the personal property described in the Sheffer mortgage from the Newton plant to Pella, where the business was to be carried on by the Pella Company. In 1929, the holders of the second or Sheffer mortgage, as trustees, brought foreclosure proceedings and secured decrees and judgment against the Woodrow Manufacturing Company for $42,879.45. Thereafter the owners of the first mortgage obtained a decree in foreclosure and judgment for $42,047.36. The real estate was sold under this decree for $20,534.86, and the personal property for $7,000, leaving a deficiency judgment of some $14,000. The second mortgage covered some property not included in the first, and that foreclosure resulted in a return to the mortgagee of some $5,905, subject to costs and attorneys' fees, leaving a deficiency judgment of some $35,000. There has been no redemption in either case.

In the present suit it is claimed by the plaintiffs that defendants committed waste of plaintiffs' security by removal to Pella of the machinery in the plant at Newton, to the damage of plaintiffs in the sum of $35,000.

We may pass over much of the detail. This court held in its former opinion that, "The measure of damages here is the difference in value of the equipped plant before it was dismantled and the value of the parts thereafter."

At the first trial the court directed a verdict for defendants on the theory that plaintiffs failed to show that they were damaged by the removal. This court in reversing that ruling, and referring to values placed upon the property by witnesses before and after dismantling, stated, "This was sufficient evidence of damage beyond the deficiency of the prior mortgage to justify submission to the jury." It also held that: "The lien was upon the plant as an equipped unit. The value of such unit was the security provided by this mortgage." Referring to the severed parts of the plant sold under foreclosure of the mortgage, it said: "If these severed parts were as valuable as they had been when united into an equipped plant at Newton, there would be no loss of value of the mortgaged security through the separation and removal, and, therefore, no damage therefrom. Appellees were entitled to present and try this issue, which was that the removal had not lessened the value of the entire security provided by this mortgage. This was an issue of fact."

The court in considering some of the questions of evidence held that any question of impending insolvency which might result in

shutting down the plant had no legal connection with the measure or amount of damages to the security of the mortgage; that the mortgage created a status as to the property which could not be altered or changed by the foreclosure. It held that all of the individual defendants were participants in or actively interested in the organization of the new company and therefore the two prospectuses of the Pella Company were admissible as admissions against them as to the value of the Newton property. It pointed out that evidence relating to the expense of removing the equipment from Newton to Pella had nothing to do with the issues of the case; that the removal was without the consent of the mortgagee and was in violation of the mortgage; and that the expense of defendants in committing the waste was not a material matter.

The errors assigned are as follows:

1. Directing a verdict for five of the defendants, in that all of the defendants were participants in the wrongful acts.

2. Failing to follow the law of the case as laid down in the former opinion.

3. Admitting incompetent testimony by unqualified witnesses as to the value of the security before and after dismantlement.

4. Unduly restricting plaintiffs' direct evidence, and also cross-examination as to Exhibit D, a letter to Sheffer signed, "Woodrow Washing Machine Company by P. H. Van Gorp, Treas. & Gen. Mgr.," and unduly limiting the cross-examination of witnesses Bruggen and Green by not permitting plaintiffs to show on cross-examination that during the time of the decline in the business of the Newton Company the individual defendants were in control and responsible therefor.

5. Overruling plaintiffs' motion for a new trial, in that the verdict was contrary to the evidence.

We take up these assignments in the order presented.

■■ Did the court err in directing a verdict for some of the defendants?

On the former appeal this court held that, under the record presented, there was sufficient evidence of damage beyond the deficiency of the prior mortgage to justify submission to the jury, and further that all the individual defendants were participants in or actively interested in the organization of the new company, and plaintiffs argue that this became the law of the case, that all were bound by acts of the others, and under the former decision the case must be submitted to the jury as to all defendants. If the evidence here were the same as in the former case, there would of course be merit in the contention, Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 52 F.(2d) 547, but it is not the same. Each individual defendant took the stand in the present case and the record is quite different from the former one. We do not think the trial court intended in the former case to hold that all of these defendants must be liable if any one might be liable. There is doubt in our minds as to whether the court should have instructed a verdict as to certain of the defendants. However, if it be granted that such action was error it was without prejudice, for the reason that the jury returned a verdict in favor of Van Gorp and the Pella Company. The record clearly shows that Van Gorp is the only defendant who took an active part in the removal of the personal property from Newton to Pella. He was general manager of the Newton Company in 1926. In 1927 he was general manager and treasurer and a director of the Pella Company. The machinery was moved from Newton to Pella under his direction, acting for and in behalf of the Pella Company. He was the chief actor in the removal. The liability of the other defendants rested on the acts of Van Gorp. It seems clear that if under these circumstances a verdict had been returned in favor of Van Gorp and the Pella Company and against the other defendants it could not have stood as to them. If these defendants were acting in concert in removing the personal property from Newton to Pella and injury was caused, they would be jointly liable or they might be severally liable. A jury might have found Van Gorp and the company of which he was an officer liable and have found that the other defendants had nothing to do with the removal; but the verdict being in favor of Van Gorp and the Pella Company we cannot conceive how, if they were not liable for damages, the other defendants could have been.

In Buckeye Powder Co. v. E. I. Du Pont de Nemours Powder Co., 248 U. S. 55, 62, 39 S. Ct. 38, 39, 63 L. Ed. 123, where the question was the holding of a defendant responsible for the acts of another defendant, the court said: "Next in importance is an exception to the court's directing a verdict in favor of the Eastern Dynamite Company and the International Smokeless Powder and Chemical Company. There were no acts done by either of these companies that were aimed at the plaintiff. The only substantial ground for charging them was that if they were par-

ties to a conspiracy as alleged they became responsible for the acts of the Du Pont Company as their own. As the jury exonerated the latter company this ground fails. So that even if the ruling was wrong it did no harm unless something more can be found in the case." The court refers to an opinion of this court in Portland Gold Mining Co. v. Stratton's Independence, 158 F. 63, 16 L. R. A. (N. S.) 677, where the question of defendant's responsibility was dependent upon the culpability of others who were the immediate actors and who had been adjudged not culpable. It was held that as the immediate actors were exonerated defendant was entitled to the benefit of that judgment. See, also, Cuneo Importing Co. v. American Importing & T. Co. (C. C. A.) 247 F. 413; New Orleans & Northeastern R. R. Co. v. Jopes, 142 U. S. 18, 12 S. Ct. 109, 35 L. Ed. 919; Lahr v. Chicago & N. W. Ry. Co. et al., 212 Iowa, 544, 234 N. W. 223; Doremus v. Root et al., 23 Wash. 710, 63 P. 572, 54 L. R. A. 649.

■ It is argued that the very directing of the verdict with respect to these defendants adversely affected plaintiffs' substantial rights to an impartial trial as against all the defendants, in that it would tend to influence the jury to believe that if these defendants could not be held the corporation and Van Gorp could not be. Counsel for both sides in their briefs state what members of the jury said to them about it, but of course that raises no question for us. The jury might infer that if these five defendants were not liable that Van Gorp and the company were not, or they might think that the court in directing a verdict for the five must have thought that Van Gorp and the company were liable or he would have directed a verdict likewise for them. These are practical questions, and every lawyer who has ever tried cases knows they cut both ways. The mere fact of a court directing a verdict in favor of some defendants certainly cannot be considered prejudicial to plaintiffs' rights as to the other defendants.

■ The second claimed error is as to the court's alleged failure to follow the law of the case as laid down in the former opinion. This could not be true as to the instructions, for the trial court carefully followed the rule of damages as stated by this court, and no exceptions were taken to the instructions, which became the law of the case. This alleged error then must be predicated upon and associated with the introduction of evidence, and such seems to be the situation. The particular instances claimed to be violative of the established law of the case were the striking of part of the evidence of plaintiffs' witness Guthrie; the failure to sustain plaintiffs' objection to the testimony of defendants' witness Bruggen as to profit and loss of the Newton Company during the year ending December 31, 1926; permitting his evidence as to what the company owed on open account, and allowing him to testify as to the nature and intensity of the competition in the washing machine business in the years 1926 and 1927; the introduction of the testimony of witness Vanderwal as to the cost of returning the machinery from Pella to Newton and reinstalling the same; permitting certain evidence of the witness Vincent.

The witness Guthrie testified on redirect: "The good will of a business adds to the value of the real estate upon which it is located." The court struck out this testimony, saying: "There is no mortgage of any good will. The only right under the mortgage was the right to take possession and put it into the hands of a receiver."

The rule of damages established by the former decision was the difference in value of the equipped plant before it was dismantled and the value of the parts afterwards. It would not seem that the question of good will of a business carried on in the plant had any bearing on this rule of damages. Of course it might enter into a witness' consideration of the question of market value of the property, and the fact that he took this into consideration could be drawn from him on cross-examination as testing the value of his opinion. One of the prospectuses issued, to which we hereinafter refer, pointed out in vivid terms the famed business of the Newton Company. From the prospectus it seems the fame extended throughout the civilized world, and this world-wide good will would of course have little to do with any difference in plant values, whether the plant was located at Newton or Pella. We think there was no error in striking the answer of witness Guthrie as to good will.

■ As to the testimony of defendants' witness Bruggen as to the indebtedness of the Newton Company and its general financial condition and the failure of the court to sustain an objection thereto, it is not necessary to determine whether this testimony was admissible under the former opinion of this court. We think it cannot be error, because it was introduced to contradict statements of certain exhibits introduced by plaintiffs. Certain exhibits introduced by plaintiffs.

These exhibits were prospectuses issued supposedly by the Pella Company, the contents of which defendants testified were unknown to them. They tended to show that the business at Newton had been making money. Bruggen's evidence contradicted this. Exhibit F showed the profits of the Newton Company for the years 1918 to 1925, inclusive. Plaintiffs had offered in evidence a balance sheet of the company of October 31, 1926, showing the current liabilities on that date to be $98,575.88. The testimony of Bruggen showed the current liabilities of the company on or about December 31, 1926, to be approximately $246,000. Inasmuch as plaintiffs introduced these prospectuses, Exhibits E and F, we think they cannot complain as to the Bruggen evidence given to contradict some of the statements therein. All of this evidence, except the statements of the prospectus Exhibit E as to depressed values of the properties at Newton, had, in our judgment, nothing to do with the issues here, and nothing to do with the rule of damages this court had established.

It was error to permit the witness Vanderwal to testify as to what it would cost to return machinery from Pella to Newton. We have referred before to what the court said in its previous opinion on the subject of the cost of moving the machinery from Newton to Pella. The cost of moving the machinery or bringing it back had nothing to do with the measure of damages. However, there was no prejudice in this testimony, for the reason that plaintiffs' own witness Guthrie had testified concerning bringing back from Pella the machinery, and putting it together as it was before it was removed from the Newton factory, and the same may be said as to the evidence of witness Vincent as to the expense of removing the machinery back to Newton.

[8] Another assignment of error is that the court admitted testimony by unqualified witnesses on the relative value of plaintiffs' security before and after the property at Newton was dismantled. In order to testify as to a question of value a witness need not be specially skilled. Evidence of value as to real estate and personal property is of course a matter of opinion, and it is not possible to lay down any precise rule as to just what knowledge a witness must have in order to testify to values. Perhaps as good a rule as is to be found anywhere is that in 22 Corpus Juris, p. 578, § 682, as follows: "While witnesses are not required to be expert or skilled in the strict and severe sense of the term in order to give opinions on value, and while there is no inflexible rule defining how much a witness must know in order to be so qualified, it must be made to appear that he has had, and utilized, means superior to those available to the jurors, for forming an intelligent opinion." Also 22 C. J. p. 587, § 686: "The value of real estate, or the value of any interests therein, or any element of value therein, its rental value, or the value of the right to use it, or its market value, may be estimated by one acquainted with the value of that class of property, who has seen the land and had adequate opportunities for observation, as by making sales or purchases, and is possessed of the requisite ability to make a reasonable inference." From 11 Ruling Case Law, p. 638, § 56, we quote: "In regard to property value, the standard of qualification of the witness cannot usually be fixed very high. Not only are professional appraisers or dealers in the class of property in question competent as witnesses, but also others who have bought and sold similar property, or who know the prices paid therefor, even though that knowledge is based on secondary evidence, provided, of course, they are familiar with the property in question. Such witnesses are not, like experts, supposed to have science and skill superior to that of the jurors, but have a knowledge of the particular facts which the jurors have not."

The qualification of a witness to testify as to values of real or personal property is a preliminary question to be determined by the court. This court has many times held that the discretion of the court so exercised will not be disturbed unless it is clearly erroneous as a matter of law. Chicago Great Western Ry. Co. v. McDonough (C. C. A. 8) 161 F. 657; St. Louis, I. M. & S. Ry. Co. v. Reed (C. C. A. 8) 216 F. 741; Minnesota & Ontario Paper Co. v. Swenson Evaporator Co. (C. C. A. 8) 281 F. 622; Hamilton v. Empire Gas & Fuel Co. (C. C. A. 8) 297 F. 422; Clarke v. Hot Springs Electric Light & Power Co. (C. C. A. 10) 55 F.(2d) 612; Stillwell & Bierce Mfg. Co. v. Phelps, 130 U. S. 520, 9 S. Ct. 601, 32 L. Ed. 1035; Gila Valley, Globe & Northern Ry. Co. v. Lyon, 203 U. S. 465, 27 S. Ct. 145, 51 L. Ed. 276; Turner v. American Security & Trust Co., 213 U. S. 257, 29 S. Ct. 420, 53 L. Ed. 788.

Few if any of the witnesses either for plaintiffs or defendants had any special knowledge of values of washing machine factories as such based on sales known to them. Plaintiffs' witnesses on value were D. L. Clark and Vern Guthrie. Clark was a real estate dealer at Newton and familiar with the New-

ton plant. He testified to a difference in value of the plant before and after removal of the personal property of about $70,000. Guthrie was in the real estate and loan business and familiar with the Newton plant. He had been a stockholder in other washing machine companies and had a general knowledge of the business. He testified to a very substantial difference in value before and after removal of the personal property. For defendants the witnesses with possibly one exception had about the same qualifications. They were: M. S. Vincent, familiar with manufacturing machinery generally and acquainted with the Newton plant in a general way only, acquainted with other washing machine factories in Newton, familiar with the character of its machinery, building, and grounds; Ben Bruggen, general manager of the Woodrow Manufacturing Company, and familiar with its affairs for years; W. N. Gallagher, president and general manager of the Automatic Washing Machine Company of Newton, familiar with the Woodrow Company in a general way, had seen the Woodrow building from the outside and had been in it probably once or twice, could not say he was familiar with it, was familiar with character of machinery used in these plants; O. N. Green, operates a foundry one-half block from the Woodrow plant in Newton, familiar with the plant, owns Newton real estate, in Woodrow building two or three times a week, sometimes every day, familiar with its machinery; W. A. Caldwell, realtor, had personally inspected the Woodrow buildings and grounds from the outside only, had dismantled several small factories, had walked through Pella factory in 1931; W. C. Harbach, widely experienced in manufacturing, had seen the Woodrow buildings a week before.

■ The qualifications of the witnesses Bergman and Anderson were not questioned. We could not say under this evidence that the court abused its discretion in permitting these witnesses to testify as to values. The weight of such testimony was of course for the jury. Some of them undoubtedly injected elements that entered into their consideration of values that should not have been considered, but from these witnesses there was competent evidence from which a jury might have found, as it did evidently, that the severed parts of the plants were as valuable as when they were united into an equipped plant at Newton, or at least that the value of the entire security had not been lessened more than $14,000, the amount of the deficiency judgment on the first mortgage. This court before said this was an issue of fact, and that fact has been settled by the jury.

■ Another error argued is that the court unduly restricted plaintiffs in direct and cross-examination. A letter of December 10, 1927, addressed to "R. W. Sheffer," signed, "Woodrow Washing Machine Company By P. H. Van Gorp, Treas. & Gen. Mgr.," was introduced. In this letter he stated: "I am satisfied that after the property is sold at Newton it will not nearly bring the first mortgage." Objection was made to it on the ground that it was not binding on any of the individual defendants, except Van Gorp, and the court limited its introduction to Van Gorp. As the jury found in favor of Van Gorp, it may be assumed that the letter could not have affected the case as to the other defendants.

■ It is complained that defendants showed by witnesses Bruggen and Green that after they bought control of the Newton factory its production decreased until its removal to Pella in July, 1927, and that when plaintiffs tried to show on cross-examination that during that time defendants were in control of the Newton Company, objection to this testimony was sustained. On this cross-examination of Bruggen counsel propounded a question claimed to be based on Bruggen's testimony at the previous trial, and relating to what he testified to at a former hearing. It was in the nature of an impeaching question. However, the ruling of the court could not be particularly prejudicial because of the fact that the control of the Newton Company for a period immediately previous to the removal of the property to Pella was shown by other evidence in the case to be in defendants or at least some of them.

■ As to witness Green a similar situation is presented. He testified to the decline of the business from 1926 and up to the first of July, 1927, and that he knew Van Gorp and his associates bought into the company about the middle of 1926, and objection was sustained to the question on cross-examination as to Van Gorp being around the plant a good deal during the rest of that year and until the machinery was removed about the first of July, 1927. This court has laid down the rule as to cross-examination that it need not be confined to the identical details testified to in chief, but extends to the subject-matter. Coca-Cola Co. v. Moore (C. C. A.) 246 F. 942; Commercial State Bank v. Moore (C. C. A. 8) 227 F. 19. We think the witness should have been permitted to answer this question, and that the line was drawn rather

strictly as to cross-examination of both of these witnesses, but at the same time the record tends to show the facts that were sought to be elicited from them. The extent of cross-examination is largely discretionary with the trial court, and we would not be warranted in saying, considering the whole record in the case, that there was an abuse of discretion in not permitting further cross-examination of Bruggen and Green. Cropper v. Titanium Pigment Co., Inc. (C. C. A. 8) 47 F.(2d) 1038, 78 A. L. R. 737.

As to the assignment with reference to overruling the motion for a new trial few words need be used. This court, in O'Brien v. General Accident, Fire & Life Assurance Corp. (C. C. A. 8) 42 F.(2d) 48, 49, said: "Moreover, the granting or sustaining of a motion for a new trial is within the discretion of the trial court, and, generally speaking, its ruling on such a motion is not reviewable. * * * It is only when the court has abused or refused to exercise its discretion that its action may be reviewed." And in Paine v. St. Paul Union Stockyards Co. (C. C. A. 8) 35 F.(2d) 624, 627, said: "Beyond question, the general rule is that the granting of a motion for new trial is addressed to the sound discretion of the trial judge, and that his denial thereof will ordinarily not be reviewed by an appellate court. Taylor v. United States (C. C. A. 8) 19 F.(2d) 813. But it is generally well settled that this rule has exceptions, and that, if an abuse of discretion, or a failure to exercise discretion, is shown, the matter may be reviewed." See, also, Fairmount Glass Works v. Cub Fork Coal Co. et al., 53 S. Ct. 252, 77 L. Ed. — (opinion filed, Jan. 9, 1933).

In the former opinion this court in referring to the prospectuses, Exhibits E and F, and the participation of all the defendants in the organization of the new company at Pella, said: "Hence all of these appellees would be bound by statements in these prospectuses as to the value of the Newton property." These prospectuses represented the Newton factory to have a depreciated physical value of $202,198.03. These prospectuses were issued of course to stimulate a stock-selling campaign. If the defendants permitted them to be issued knowing their contents they would be bound by their statements, but the strange spectacle is presented of every individual defendant testifying that he did not know of the contents of the prospectuses further than that his own picture and biography were there set forth, and that some promoter was responsible for getting them up, and Van Gorp testifies that when he saw them he gave

instructions that they should not be circulated. The jury evidently believed this testimony and gave no consideration to the statements of the prospectuses as to the value of the Newton plant. They likewise overlooked or disbelieved the evidence as to the Pella Company selling back to the Newton Company the real estate alone for $100,000, and other important evidence on values. However, the credibility and weight of the evidence were for the jury.

We have pointed out that there were some errors in the trial of the case; but as the errors were not sufficiently prejudicial to warrant reversing the case, there is nothing for us to do but affirm the judgment of the trial court.

Affirmed.